**ANIMAL PROTECTION, EDUCATION AND INFORMATION FOUNDATION, Plaintiff–Appellant,**

v.

**FRIENDS OF THE ZOO OF SPRING-FIELD, MISSOURI, INC., Defendant–Respondent.**

No. 19265.

Missouri Court of Appeals, Southern District, Division Two.

Jan. 17, 1995.

Charles B. Cowherd, Farrington & Curtis, P.C., Springfield, for appellant.

Michael J. Cordonnier, Craig A. Smith, Daniel, Clampett, Lilley, Dalton Powell & Cunningham, Springfield, for respondent.

PARRISH, Judge.

This is an appeal from an action for breach of contract and a counterclaim for declaratory judgment. The agreement that is the subject of this appeal is a writing executed on behalf of Friends of the Zoo of Springfield, Missouri, Inc., (FOZ) and by Murray Hill. Mr. Hill assigned his rights and interests in the agreement to Animal Protection, Education and Information Foundation (APEIF) prior to trial. FOZ is a Missouri not-for-profit corporation. APEIF is a Pennsylvania not-for-profit corporation. APEIF appeals the amount of damages it was awarded for breach of contract and the trial court's declaration of APEIF's rights under the terms of the agreement. This court affirms.

In December 1965, Mr. Hill imported a one-year-old male elephant named Onyx. Mr. Hill owned Onyx until 1980 when he gave him to FOZ.

FOZ was established to support Dickerson Park Zoo, a facility owned by the City of Springfield, Missouri. Its purpose is to support the zoo and other activities related to animals and nature. It manages and operates Dickerson Park Zoo, pursuant to a trust agreement, for the City of Springfield. FOZ has operated the zoo since 1982.

Before FOZ assumed responsibility for operating the zoo under the terms of the 1982 trust agreement, it was contacted by Mr. Hill about the possibility of accepting ownership of Onyx. FOZ, in turn, contacted the Springfield Park Board and inquired about housing Onyx at the zoo if it acquired the elephant. FOZ suggested that Onyx's presence would enhance the status of the zoo. The park board and zoo staff agreed for Onyx to be placed on the zoo grounds and to provide for his care if FOZ acquired him.

Onyx had become difficult to control. Mr. Hill explained his reason for transferring Onyx to FOZ was that Onyx had developed a behavioral pattern called "must." He told the trial court, "Male elephants come into a behaviorial [sic] pattern called must. It doesn't come on suddenly. He had gone through this period at least one, mostly twice or three times a year for seven previous years. But each time it seems to get a little worse."

Onyx attacked Mr. Hill. The elephant hit him, injuring his ribs. Onyx threw Mr. Hill twenty feet in the air and tried, unsuccessfully, to spear him with his tusks. About two-and-a-half weeks later, Mr. Hill arranged to give Onyx to FOZ.

Personnel associated with the zoo and with FOZ believed Mr. Hill intended to destroy Onyx if arrangements were not made for the elephant to be given away. There was a hole dug near the location where Mr. Hill kept Onyx. Mr. Hill told the Zoological Curator of the Dickerson Park Zoo that he was prepared to shoot the elephant; that he had the equipment to push the elephant into the hole and cover him up.

The director of Dickerson Park Zoo, Dale Tuttle, met with Murray Hill. Michael Crocker and Paul Price were also present. Mr. Tuttle had a form entitled "Animal Entry Slip" for Mr. Hill's signature. The form stated that Mr. Hill was donating Onyx to FOZ. It identified the animal as "Asiatic Elephant." The form was dated "9/19/80." It stated the animal's scientific name was *"Elephus maximus"* and specified his identification as "House name 'Onyx.'" Murray Hill was listed as the source of the contribution. The following statement was printed at the bottom of the form above the line for the donor's signature and places for signatures of two witnesses:

IN DONATING THE ABOVE TO FRIENDS OF THE ZOO, I WAIVE ALL TITLE AND CLAIM THEREIN. FURTHER, UNLESS STATED HERE AS CONDITIONS, I GRANT FRIENDS OF THE ZOO COMPLETE AUTHORITY TO USE OR DISPOSE OF SAID DONATION AS THEY SEE FIT.

Three sentences were typed on the form as "CONDITIONS." They appear below the name and address of the donor and above the places for the donor's signature and signatures of witnesses to the transaction. They provide:

Murray Hill will have first option at such time that FOZ may want to dispose of animal. All breeding or sperm collection shall be devided [sic] equally except the breeding of Minyahk. All Ivory will be returned to MH.

The form had been completed, other than the signatures and the conditions, before Mr. Tuttle met with Mr. Hill to complete the transaction. Mr. Hill typed the conditions on the form in the presence of the three men. They then signed the form. Murray Hill signed as donor. Michael Crocker and Paul Price signed as witnesses. Dale Tuttle signed as the representative of FOZ who accepted the gift.

APEIF sought damages from FOZ for breach of the conditions set forth on the Animal Entry Slip. It contended it was entitled to payment for use of Onyx in breeding elephants belonging to the City of Springfield. APEIF sought one-half of breeding proceeds derived or that "should have been derived" from Onyx's breeding services.

FOZ's counterclaim sought determination of ownership of Onyx; of how proceeds from breeding services of Onyx were required to be divided; and whether FOZ is liable to APEIF for fees when Onyx is used to breed elephants owned by the City of Springfield.

The trial court declared that FOZ "has the sole and exclusive right to determine when, where, with whom, for what fee (if any), and under what circumstances Onyx may be offered for breeding services." It awarded APEIF nothing for breeding services performed by Onyx on an elephant owned by the City of Springfield. FOZ had not charged the city breeding fees. The trial court denied APEIF recovery of any part of a $5,000 fee collected by FOZ from the St. Louis Zoo but later returned when an elephant thought to have been bred to Onyx was determined not to be pregnant.

APEIF's first point is directed to the trial court's declaration that FOZ has the right to determine what fees, if any, are charged for breeding services of Onyx. APEIF contends the trial court's interpretation of the conditions of the Animal Entry Slip is erroneous. APEIF argues the trial court's interpretation "is clearly contrary to the express language" in that the conditions state the donor of Onyx "will receive one-half of either (a) the offspring sired by Onyx or (b) the reasonable value of his breeding services, except with respect to the breeding of 'Minyahk'."

Minyahk is an elephant the City of Springfield owned at the time Onyx was contributed to FOZ. Minyahk was displayed at Dickerson Park Zoo. It was the only elephant the city owned.

█ Neither party contends the conditions included in the Animal Entry Slip were ambiguous. There was no finding of ambiguity by the trial court. Thus, in construing the conditions, their meaning will be gleaned from the language used, not from extrinsic evidence. *Wilson v. General Mortgage Co.,* 638 S.W.2d 821, 823 (Mo.App.1982). The objective "is not to determine what the parties intended to say, but what they intended by what they did say." *Allen v. Globe–Democrat Pub. Co.,* 368 S.W.2d 460, 466 (Mo. 1963). In construing the language, the words are afforded their ordinary and popular meaning. *Id.*

APEIF's contention that the terms of the Animal Entry Slip provided for the donor to receive half the offspring sired by Onyx is without foundation. The agreement contains no such statement.

Likewise, the agreement which manifests Mr. Hill's transfer of ownership of Onyx to FOZ does not address an amount to which the donor (or an assignee) would be entitled when Onyx is made available for breeding. It does not provide for payment of one-half the reasonable value of Onyx's breeding services. It provides only for division, equally, between FOZ and the donor of "all breeding or sperm collection."

█ Animals are regarded as property. Wild animals reduced from the wild state in compliance with applicable law become property of an individual. *See* 3A C.J.S. *Animals* § 8 (1973). "Ownership of property comprises numerous different attributes. The chief incidents of the ownership of property are the right to its possession, the right to its use, and the right to its enjoyment, according to the owner's taste and wishes, free from

unreasonable interference, usually to the exclusion of all others." 73 C.J.S. *Property* § 27 (1983) (footnotes omitted), citing *Hoffmann v. Kinealy*, 389 S.W.2d 745 (Mo. banc 1965).

 FOZ, as owner of Onyx, possesses the right to determine how and to what extent Onyx will be used for breeding purposes, including whether a charge will be made for those services. APEIF, as Mr. Hill's assignee, is not entitled to one-half the reasonable value of Onyx's breeding services. APEIF is entitled to one-half of *collections* for breeding services. Point I is denied.

In Point II APEIF contends the trial court erred in not awarding $5,000 for its share "of the reasonable stud fee for impregnating the elephant 'Connie'." APEIF contends that an elephant owned by the City of Springfield named Connie was bred to Onyx and produced a live calf, Katie; that at time of trial it was revealed that Connie was again pregnant as a result of having been bred to Onyx.

APEIF argues that the reasonable value of two breeding fees would be $10,000. APEIF sought one-half of that amount. The trial court found against APEIF. For the reasons stated in denying Point I, Point II is denied.

Point III is directed to a fee FOZ was paid by the St. Louis Zoo. The fee was later refunded. APEIF sought one-half of the amount paid. The trial court denied the request.

An elephant belonging to the St. Louis Zoo, Carolyn, was made available for breeding to Onyx. The agreement between FOZ and the St. Louis Zoo provided that a fee of $5,000 would be paid by the St. Louis Zoo upon confirmation that Carolyn was pregnant. A blood test indicated Carolyn was pregnant and she was returned to the St. Louis Zoo; however, additional testing revealed she was not pregnant. The St. Louis Zoo had already paid the $5,000 fee before final determination was made that Carolyn was not pregnant. The amount was returned.

APEIF claims the refund was a voluntary payment by FOZ and, therefore, it is entitled to one-half of the amount FOZ received. APEIF relies on *Commercial Union Ins. Co. v. Farmers Mut. Fire Ins. Co.*, 457 S.W.2d 224 (Mo.App.1970). *Commercial Union* involved payment of an insurance claim by an insurer that did not know the insured had other coverage for the loss. The trial court found that the first insurer paid the claim as a "volunteer," and, therefore, was not entitled to contribution from a second insurer for part of the claim.

In *Commercial Union* the appellate court stated that a volunteer who pays money, in the absence of fraud or duress, is not entitled to the return of the money. *Id.* at 226. The court found, however, "But the law requires in order to be in this status, one must have full knowledge of all the facts in the case." *Id.* It held that the first insurer was not a volunteer because, at the time the payment was made, the first insurer had no knowledge that there was a second insurance policy. The court went on to affirm the decision of the trial court on other grounds not pertinent to this case.

 The question of whether a payment was made as a volunteer is applicable to the payment made by the St. Louis Zoo, not to whether the reimbursement by FOZ was made as a volunteer. At the time the St. Louis Zoo paid the breeding fee, it believed Carolyn was pregnant. That information was later determined to be false. The St. Louis Zoo did not have knowledge of all the facts when it paid the $5,000 to FOZ. Therefore, it had the right to a refund. FOZ had the corresponding obligation to pay the refund. "Every obligation is the correlative of a corresponding right." *Niblett Farms, Inc. v. Markley–Bankhead, Inc.*, 202 La. 982, 13 So.2d 287, 290 (1943), quoting the syllabus in *People's Bank v. Cage*, 40 La.Ann. 138, 3 So. 721 (1888).

Any right APEIF would have had to share in a breeding fee collected by FOZ was subject to the same obligation FOZ had to refund the payment. Point III is denied. The judgment is affirmed.

PREWITT and MONTGOMERY, JJ., concur.

GARRISON, P.J., and CROW, J., recuse.