**Michael D. GLOVER,**
**Plaintiff-Respondent,**

v.

**MISSOURI PROPERTY INSURANCE PLACEMENT FACILITY,**
**Defendant-Appellant.**

**No. 47032.**

Missouri Court of Appeals,
Eastern District,
Division One.

Aug. 21, 1984.

Joseph L. Leritz, Leritz & Reinert, St. Louis, for defendant-appellant.

David O. Danis, Richard Alan Cooper, Whalen, Murphy, Reid, Danis, Garvin & Tobben, St. Louis, for plaintiff-respondent.

STEWART, Judge.

This is an appeal from a judgment on a jury verdict for plaintiff in an action on a policy of fire insurance issued by defendant insuring plaintiff's real and personal property against loss by fire. Defendant contends the court erred in submitting the case to the jury because plaintiff did not have an insurable interest in the personal property at the time of the loss and that the court also erred in allowing prejudgment interest. We reverse and remand for a new trial.

In June 1979 plaintiff purchased a tavern including the building and personal property from Phillip "Doc" Smith for $85,000. Plaintiff borrowed the money from the Bank of Hayti for which he gave his note and deed of trust. Payments to the bank were $1100 per month. In July 1979 defendant issued to plaintiff its policy of fire insurance providing coverage on the building in the sum of $65,000 and on the contents of the building in the sum of $20,000. 1st Bank of Portageville and Bank of Hayti were named under the mortgage clause.

In January of 1980, Mr. Glover orally agreed to sell the tavern to "Doc" Smith, from whom he had purchased it, and L.V. Smith, his brother. It was agreed between Mr. Glover and the Smiths that Mr. Glover

would receive $90,000.00 for the real and personal property, constituting the tavern. The Smiths were to pay $6,000.00 down as an escrow payment, the balance to be due at the end of 90 days. L.V. Smith was going to sell his house to raise his share of the purchase price. The Smiths and Mr. Glover agreed that during this 90 day period the Smiths would rent the tavern from Mr. Glover for $1,100.00 per month. The parties additionally agreed that at the end of the 90 day period if the Smith brothers did not pay the balance of the monies owed the tavern would remain Mr. Glover's property and he would keep the $6,000.00.

In mid-January the Smiths gave plaintiff a check for $6,000.00. The next day an inventory was taken, plaintiff gave the Smiths the keys and they took over operation of the tavern. Plaintiff had two employees who continued to work at the tavern during the time the Smiths operated the business. The employees were under the supervision of the Smiths. The Smiths could hire and fire, set pay and assign working hours of the employees. Plaintiff remained responsible for reporting employee withholding, social security and taxes. The Smiths determined what merchandise to purchase. Plaintiff's name was placed on all invoices for merchandise and he was responsible for payment should the Smiths not pay. The liquor license remained in plaintiff's name. The Smiths were making application for liquor licenses so that there would be an orderly transition if the sale was completed.

Plaintiff received $1,100.00 per month rent. The proceeds from the operation of the business belonged to the Smiths who used it to replace merchandise and to pay the help. If there was a profit it belonged to Smiths.

On February 29, 1980 the building and its contents were destroyed by fire.

The real estate had not been conveyed to the Smiths and there was no bill of sale for the personal property. Plaintiff remained liable on the note secured by the deed of trust covering the loan made by plaintiff for the purchase of the real and personal property.

An eleven page inventory of personal property made after the fire showed a loss of $29,009.00. The policy limit for personal property was $20,000.00.

The defendant paid the bank $65,000.00 covering the real property loss. After that payment there was a balance due on the note of approximately $23,000.00. Defendant refused to pay the personal property loss on the ground that plaintiff did not have an insurable interest in the personal property.

The Smiths offered to purchase the lot. Plaintiff agreed to sell the lot to them if they would pay off the balance of the loan at the bank of approximately $23,000.00. Smiths accepted and a deed to the property was executed on September 8, 1980. Shell Oil Company had offered plaintiff $30,-000.00 for the lot after the fire.

Defendant's principal contention is that the plaintiff failed to make a submissible case because he did not own or have a sufficient insurable interest in the property on the date of the fire to enable him to recover under the policy of insurance issued by defendant.

In order to recover, plaintiff must have had an insurable interest in the property at the inception of the policy and at the time of loss. Without such an interest the insurance contract is one of wager and is void as against public policy. *Prewitt v. Continental Insurance Company*, 538 S.W.2d 902, 905 (Mo.App.1976). In considering this issue we must view the evidence in the light most favorable to the plaintiff.

The jury could have found that plaintiff and the Smiths entered into an agreement that would result in the sale of the building, the furnishings and the inventory of merchandise for $90,000, provided the entire consideration was paid ninety days after the Smiths made the payment of $6,000.00 in the nature of earnest money. Plaintiff no longer wanted to operate the tavern and in order to give continuity to

the business it was agreed that the Smiths would operate or manage the tavern for which they would pay $1,100.00 per month. The Smiths paid the earnest money of $6,000.00, an inventory of personal property was taken and the Smiths took possession of the tavern.

The question of whether title to the personal property passed is dependent upon the intention of the parties, and such intention is determined from the agreement and the circumstances under which it was made. In this case there was but one contract that encompassed both the real and personal property. It is clear that the parties did not consider the contract to be separable. The jury could have found the parties did not intend that title to the personal property pass without the real estate. At the time of the fire no deed or bill of sale had been executed. Plaintiff testified that if the Smiths did not "come up with the balance everything would still be mine." The evidence would support a finding that the parties did not intend title to pass to the real and personal property until the full consideration had been paid. The Smiths would be tenants of plaintiff in the interim. The property during that time "still" belonged to plaintiff. Also indicative of this intention is the fact that an inventory was taken before the Smiths began operation of the tavern. The consideration for the purchase of real and personal property was $90,000.00. The price was not subject to variation upon inventory. The only purpose to be served by the inventory would be to be certain that the personal property and like merchandise would still be plaintiff's if he were to go back into possession of the tavern in the event the sale was not consummated.

When the fire occurred it became impossible for plaintiff to convey the building and its contents. The plaintiff could not perform under the original agreement. Plaintiff subsequently sold the vacant lot to the Smiths at its fair market value; there was no personal property to convey. This did not change the status of the property as of the date of the fire. *Florea v.*

*Iowa State Ins. Co.,* 225 Mo.App. 49, 32 S.W.2d 111, 114 (1930).

There was sufficient substantial evidence to permit the jury to find that plaintiff had an insurable interest as owner of the property.

Defendant's next point is dependent upon the premise that plaintiff held only a security interest in the personal property. This issue is mooted by reason of the fact plaintiff's interest was as owner not as holder of a security interest.

Defendant also contends that the court erred in giving plaintiff's verdict directing instruction because it failed to require a finding that the plaintiff had an insurable interest in the personal property and that plaintiff had sustained a loss.

The verdict directing instruction followed MAI 31.09 and reads as follows:

> Your verdict must be for Plaintiff if you believe:
>
> First, Defendant issued its policy to Plaintiff on the contents located at 416–22 Hwy. 61N, Portageville, Missouri, covering loss due to fire, and
>
> Second, such property was damaged by fire, and
>
> Third, the policy was in force on the date of such loss.

It has long been held that the insured must plead and prove that he had an insurable interest in the object of the coverage at the time the policy was issued and at the time of loss. *Harness v. National Fire Insurance Co.,* 62 Mo.App. 245, 247 (1895). This requirement remains unchanged. *Duncan v. Andrew County Mut. Ins. Co.,* 665 S.W.2d 13, 16 (Mo.App. 1984).

The facts in issue necessary to authorize a recovery must still be submitted in the verdict directing instruction even though they are not specifically set out in the model MAI instruction. *Duncan v. Andrew County Mut. Ins. Co.,* 665 S.W.2d at 17.

The primary issue in this case was whether plaintiff had an insurable interest

in the personal property that was destroyed in the fire. Whether properly pleaded, the issue of plaintiff's insurable interest was tried without objection and the pleading will be considered to have alleged that essential element. Plaintiff's verdict directing instruction failed to require a finding on this essential element of plaintiff's case. This was prejudicial error requiring that we reverse and remand for a new trial. *Duncan v. Andrew County Mut. Ins. Co.*, 665 S.W.2d at 18.

We find no merit in the contention that there was issue as to whether plaintiff suffered a loss. Plaintiff's personal property was destroyed. There is no evidence that he was reimbursed for that specific loss. If he received a benefit from selling the lot it did not affect the loss of his property.

 We consider yet another point that may arise on retrial. The defendant argues that the court should not have assessed pre-judgment interest because the amount of damages was not liquidated. Defendant never raised the issue of damages. The amount of the loss exceeded the policy limit. A liquidated claim is one that is readily ascertainable by reference to recognized standards. The fact that defendant contests its liability under the policy does not make the amount due unliquidated. *Schmidt v. Morival Farms*, 240 S.W.2d 952, 961 (Mo.1951); *Twin River Const. Co. v. Public Water Dist.*, 653 S.W.2d 682, 695 (Mo.App.1983). The court did not err in assessing pre-judgment interest.

For the reasons set out herein the case is reversed and remanded for a new trial.

KELLY, P.J., and SNYDER, J., concur.