**AMERICAN FAMILY MUTUAL INS. CO., Respondent,**

v.

**DOUG ROSE, INC., Appellant.**

**No. WD 44476.**

Missouri Court of Appeals, Western District.

Sept. 22, 1992.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 27, 1992.

Application to Transfer Denied Dec. 18, 1992.

J. Michael Vaughan, J. Bret Armatas, Cindy L. Reams, Kansas City, for appellant.

Kent M. Bevan, Janet I. Blauvelt, Kansas City, for respondent.

Before SPINDEN, P.J., and TURNAGE and BRECKENRIDGE, JJ.

SPINDEN, Presiding Judge.

On May 13, 1988, fire extensively damaged several apartment buildings under construction in Liberty. Doug Rose, Inc., (DRI) owned the structures. American Family Mutual Insurance Company had insured the buildings against fire damage,

and in this lawsuit it seeks a declaration of the extent of its liability.

The trial court set American Family's liability at approximately $1.05 million, the cost of repairing the structures. The trial court rejected DRI's contention that § 379.-140[1] required American Family to pay the full face value of the insurance policy, nearly $2.04 million. We agree that American Family was not liable for the policy's face value because the policy provided for a provisional amount for insured buildings under construction. We conclude, however, that the trial court used the wrong measure of damages. Instead of using the cost of repair, it should have awarded DRI the difference between the structures' reasonable value immediately before the fire and their reasonable value immediately after the fire.

American Family's policy covered four of DRI's apartment buildings known as Phase II of Jefferson Park of Liberty Apartments. The policy's face values at the time of the fire were: Building 6—$637,700; Building 7—$760,700; and Building 8—$637,700.[2]

The policy was a non-reporting, completed value policy with provisional limits. Because it was non-reporting, the risk and value of the structures insured were averaged over the term of the policy, and the policy was not rewritten as the value of the structures increased, as is the practice with reporting policies. As a completed value policy, the amounts stated in the declarations were the amounts of coverage upon a building's completion, and the liability limits were based on the value of the structures as construction progressed. American Family did not issue a separate and new policy upon a building's completion.

DRI was paying the same premium as it would be paying after the buildings were finished. American Family's manual stated, "Rate for Builders' Risk the same as though the building were completed and owner occupied. The amount of coverage is 100% of the completed value."

1. All statutory references are to the 1986 Missouri Revised Statutes.

2. No dispute exists about Building 5. American Family paid $21,867.60 for its repair, and DRI does not contest that amount as improper.

The declarations sheets indicated that the property was insured for replacement cost. The policy defined replacement cost as "the smaller of: (1) the cost to repair or replace the damaged property at the same site, and for similar use, using new materials of like kind and quality without deduction for depreciation; or (2) the amount actually and necessarily spent to repair or replace the damaged property."

When the fire occurred, none of the buildings was completed. Buildings 6 and 8 suffered substantial damage to their roofs and walls. Building 7 was burned to the ground; only the concrete slab and the stem walls remained. Building 5 suffered much less damage. Parts of the buildings, including Building 7, were salvaged and used in reconstructing the structures.

On July 7, 1988, Capitol Mortgage Company, DRI's construction lender, filed a claim with American Family for the fire. Asked in the claim form what amount of loss it claimed, Capitol Mortgage responded that it sought the amount of indebtedness secured by the property: $2,218,669.40 and the interest due.

DRI filed its own proof of loss form on July 12, 1988. It sought the policy's face value. In the alternative, it requested the difference between the buildings' value before the fire and their value after the fire. American Family rejected DRI's request because it did not include the cost of repairing the buildings. On August 15, 1988, DRI filed a second proof of loss with an itemized cost of repair.

On August 24, 1988, American Family offered to pay DRI $21,867.60 to repair Building 5. On September 6, 1988, it offered to pay $1,027,501.48 for the cost of repairing the remaining three buildings. Both offers required DRI to sign releases. DRI rejected both offers, indicating that it did not agree that the amount was sufficient to cover its damages and refused to sign the releases. On September 21, 1988, American Family issued a draft for $1,049,-

339.08 with no release. DRI accepted it. At trial, the parties stipulated that $1,049,-339.08 was "the cost to repair Building 5, 6, 7 and 8 to the stage of completion which existed immediately before the fire occurring on or about May 13, 1988."

### Section 379.140

 DRI wants to apply § 379.140 to this case because it incorrectly reads the statute to guarantee it the full face value of the policy. The statute provides that "[i]n all suits brought upon policies of insurance against loss or damage by fire ..., the defendant shall not be permitted to deny that the property insured thereby was worth at the time of the issuing of the policy the full amount insured[.]" The General Assembly did not guarantee in this provision the full face value; it mandated that an insurance company be estopped from denying that the insured property was worth less than the amount for which it had insured it.

 American Family is not attempting to pay less than the policy's provisional limits in effect on the date of the fire. From our reading of the policy, it was obligated to pay only the provisional amount, not the face value. Section I.1 of the policy's builders risk conditions states clearly, "The limit of insurance stated in the declarations [face value] represents the *completed value* of the building insured. While this endorsement is in effect, this limit is a *provisional amount.*"[3] Hence, the face value was not the amount of insurance until the buildings were complete.[4]

DRI makes a further attempt to apply § 379.140 to its case by asserting that Buildings 6, 7 and 8 were total losses. The trial court found that they were not. DRI challenges this finding because, again, it wrongly assumes that the finding deprives it of a benefit under § 379.140. The statute provides that "in case of total loss of the property insured, the measure of dam-

---

3. We added the emphasis.

4. The trial court refused to apply § 379.140 in reliance on *Jones v. State Farm Fire and Casualty Co.,* 740 S.W.2d 708 (Mo.App.1987). In that case, this court's Eastern District concluded that

the statute did not apply to buildings under construction. Given the incorrect interpretation of the statute urged by DRI—that it guarantees the policy's face value—we need not pass judgment on whether the statute is applicable.

age shall be the amount for which the same was insured[.]" DRI wrongly assumes that its property was insured for $2.04 million on the date of fire. Section I.1 quoted above makes it clear that it was not. Hence, even if the trial court's finding was incorrect—and we do not so conclude—the statute would not benefit DRI.

## Damages

■ DRI complains about the way the trial court measured damages. It contends, first, that the trial court should have concluded from the policy's language that American Family was liable for the damaged structures' actual value.

DRI points to policy's provision noted above that American Family would "pay no more than the actual value of the covered property on the date of the loss." This provision, it asserts, requires that American Family pay the difference between the buildings' value immediately before the fire and their value immediately after the fire. This provision does not support DRI's point. It does not state that American Family must pay actual value; it states that American Family will pay "no more" than actual value. It is merely a ceiling on what American Family must pay under the policy. The provision to which DRI points refers it back to the declarations page where the face value is stated as "replacement cost." The policy defines replacement cost as "the smaller of: (1) the cost to repair or replace the damaged property at the same site, and for similar use, using new materials of like kind and quality without deduction for depreciation; or (2) the amount actually and necessarily spent to repair or replace the damaged property."

DRI then argues, in the alternative, that we should conclude, pursuant to *Jones v. State Farm Fire and Casualty Co.*, 740 S.W.2d 708 (Mo.App.1987), that the measure of damages is, as a matter of law, the proportion of structures' completion to the policy's face value. We find nothing in *Jones* suggesting this interpretation. The *Jones* court based its decision on the insurance policy at issue.

■ DRI then complains that the trial court precluded it from making an election

under § 379.150. The trial court erroneously characterized § 379.150 as a valued policy statute and refused to apply it in this case. The statute provides:

Whenever there is a partial destruction or damage to property covered by insurance, it shall be the duty of the party writing the policies to pay the assured a sum of money equal to the damage done to the property, or repair the same to the extent of such damage, not exceeding the amount written in the policy, so that said property shall be in as good condition as before the fire, at the option of the insured.

This statute "is not a valued policy statute[.]" *Wells v. Missouri Property Insurance Placement Facility*, 653 S.W.2d 207 (Mo.banc 1983). The election offered is available to DRI notwithstanding any provision in DRI's policy. *Boren v. Fidelity and Casualty Company of New York*, 370 S.W.2d 706 (Mo.App.1963).

Hence, § 379.150 did apply and granted DRI the option of either obtaining payment for damages or repair. We conclude from the claim made by DRI on July 12, 1988, that it elected the first option, payment for damages.

■ American Family counters that Capitol Mortgage, DRI's mortgage lender, made a claim on July 7, 1988, which constituted an election for the cost to repair, and that this election is binding on DRI. Capitol Mortgage did not make an election when it submitted its claim. It simply noted that the insured property secured a principal indebtedness of $2,218,669.40 and attached a copy of the deed of trust. American Family points to § 6.1.3 of the deed of trust as evidence that Capitol Mortgage made an election for the cost of repair. That provision did not constitute an election; it required DRI to obtain "builders' all-risk extended coverage insurance in an amount based upon the replacement value of the Project[.]" DRI did that. In § 6.2.3, however, the deed of trust granted DRI the option of using insurance proceeds to rebuild or to pay off or reduce the mortgage. Capitol Mortgage did reserve the right to make the option of whether to

rebuild or reduce the indebtedness if the insurance proceeds were insufficient to pay the total cost of rebuilding. We conclude that Capitol Mortgage had no intent to exercise any election until after it was determined that insurance proceeds would be insufficient. Hence, Capitol Mortgage's claim of July 7, 1988, cannot be deemed to be an election.

██ Because the trial court deemed § 379.150 to be inapplicable, it made no finding what the amount of payment should be. The Supreme Court instructed in *Wells,* 653 S.W.2d at 210, that damages under § 379.150 are not to be measured by cost of repair, as American Family asserts, but is the difference between the structures' value immediately before the fire and their value immediately after the fire. The cost of repair is admissible as evidence of damage, but it alone is insufficient to establish the amount of damages. *Id.*

The parties submitted evidence concerning the issue, but it was in conflict. The trial court is in a much better position than this court to resolve that conflict. Hence, we must remand the case to the trial court to make the determination.

### Estoppel

██ DRI stipulated that the $1.04 million it received covered the actual cost to repair or replace the damaged property at the site following the fire. American Family claims that the stipulation estops DRI from seeking more than it has already been paid. We disagree. At the time American Family paid DRI, it knew that DRI had elected "damage done" under § 379.150 for any partial losses it had sustained, and that DRI disputed the amount it was being paid and had refused to sign a general release. DRI is not estopped.

### Conclusion

The trial court correctly determined that DRI was not entitled to the policy's face value, but it incorrectly concluded that the cost of repair was the proper measure of damages. We reverse its judgment awarding DRI $1,049,339.08 and remand for the trial court to redetermine the amount to be awarded DRI by using the proper measure of damages: the difference in the buildings' value immediately before the fire and their value immediately after the fire.

All concur.