Marion J. GORMAN, et ux., Respondents,

v.

FARM BUREAU TOWN & COUNTRY INSURANCE COMPANY OF MISSOURI, Appellant.

No. WD 55392.

Missouri Court of Appeals, Western District.

Oct. 20, 1998.

Phillip S. Smith, Kansas City, for Appellant.

Gerald L. Thompson, Kansas City, for Respondents.

Before SPINDEN, P.J., and ULRICH and EDWIN H. SMITH, JJ.

EDWIN H. SMITH, Judge.

Farm Bureau Town & Country Insurance Company of Missouri appeals the summary judgment of the circuit court for Marion and Doris Gorman, respondents, for $35,000 on their claim for payment of policy limits in that amount under a policy of insurance purchased from the appellant by them on March 14, 1992, for a loss of property by fire that occurred on September 24, 1995. The property which was destroyed was a house purchased on March 4, 1986, by a business partnership consisting of the respondents and

Jay Appelson. Thereafter, on August 31, 1995, the respondents quitclaimed their interest in the property to Appelson in exchange for a promissory note for $7,400, secured by a deed of trust on the property. Summary judgment was granted to the respondents on the basis that, although at the time of their loss they no longer had an ownership interest in the insured property, they had an insurable interest and were entitled to policy limits pursuant to the "valued policy statute," § 379.140,[1] which estops an insurer from denying that the value of the property at the time of loss was less than the coverage purchased.

In its sole point on appeal, the appellant claims that the trial court erred in denying its motion for summary judgment and in sustaining the respondents' motion for summary judgment for $35,000. The appellant claims that the trial court erred because, on the undisputed facts of the case, the respondents were entitled, as a matter of law, under the policy of insurance, to judgment for only $7,400, representing their mortgage interest in the property at the time of their loss, in that the loss payment provisions of the policy expressly limited their coverage and recovery to their insurable interest, which in the case of mortgagees, such as the respondents, was the amount of their mortgage.

We reverse and remand.

### Facts

On March 4, 1986, the partnership between the respondents and Appelson purchased a house in Kansas City, Missouri. On March 14, 1992, the respondents purchased a policy of insurance from the appellant, policy number M 98 789, in the amount of $35,000, insuring the house against loss by fire.

On August 31, 1995, the respondents quitclaimed their one-half interest in the property to Appelson in exchange for a promissory note in the amount of $7,400, secured by a deed of trust on the house. The respondents never informed the appellant of the sale of their interest in the property or arranged to transfer the insurance coverage to Appelson.

1. All statutory references are to RSMo 1994, unless otherwise indicated.

The respondents remained the owners of the insurance policy up to and including the time of loss. Appelson never purchased his own policy of insurance on the property in question. The respondents contended at trial that at the time they sold their interest in the property to Appelson, they entered into an oral agreement with him to maintain the policy of insurance on the property for $35,000 until such time as he could obtain his own coverage. On September 24, 1995, after the respondents had quitclaimed their interest in the property to Appelson, the insured house was totally destroyed by fire. The damage to the house was in excess of the $35,000 policy limits.

On or about November 29, 1995, the respondents made a demand on the appellant pursuant to the insurance policy for payment of the policy limits. The appellant thereafter tendered to the respondents a check in the amount of $7,400 representing their mortgage interest, which they refused. On February 29, 1996, the respondents filed a two-count petition in the Circuit Court of Jackson County seeking: (1) payment of policy limits under the insurance policy; and (2) damages pursuant to § 375.420 for vexatious refusal to pay.

On August 8, 1996, the respondents moved for summary judgment as to count one of their petition, relying on the valued policy statute, § 379.140, which motion was denied by the trial court on September 12, 1996. On October 18, 1996, the respondents filed a second motion for summary judgment based on their claim that, because they had entered into an oral agreement with Appelson to maintain the existing insurance coverage on the house for $35,000 until he was able to obtain his own coverage, they had an insurable interest in the property for $35,000. This motion was denied by the trial court on December 9, 1996. On December 2, 1997, the appellant moved for summary judgment. The trial court denied the appellant's motion on December 17, 1997. On January 15, 1998, the trial court reconsidered and sustained the respondents' second motion for summary judgment, finding that on the date of the fire that destroyed the insured property, the respondents had an insurable interest therein, although less than $35,000, but were entitled to policy limits, applying the valued policy statute.

This appeal follows.

## Standard of Review

When considering appeals from summary judgments, the Court will review the record in the light most favorable to the party against whom judgment was entered. Facts set forth by affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion. We accord the non-movant the benefit of all reasonable inferences from the record.

Our review is essentially *de novo*. The criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of sustaining the motion initially. The propriety of summary judgment is purely an issue of law. As the trial court's judgment is founded on the record submitted and the law, an appellate court need not defer to the trial court's order granting summary judgment.

*ITT Commercial Finance v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993) (citations omitted). Summary judgment will be upheld on appeal if: (1) there is no genuine dispute of material fact, and (2) the movant is entitled to judgment as a matter of law. *Id.* at 377.

## I.

In its sole point on appeal, the appellant claims that the trial court erred in denying its motion for summary judgment and in sustaining the respondents' motion for summary judgment for $35,000. Logically, we must first address its claim that the trial court erred in granting the respondents' motion. As to the grant of the respondents' motion, the appellant claims that the trial court erred because, on the undisputed facts of the case, the respondents failed to show that, under the policy of insurance, they were entitled, as a matter of law, to judgment of $35,000, in that the amount of the respon-

dents' coverage and recovery under the contract of insurance was in dispute. In this respect, the appellant contends that in its response to the respondents' motion it raised the issue of whether their recovery was limited by the express terms of the contract to their mortgage interest at the time of loss of $7,400, or their ownership interest of $35,000 at the time the policy of insurance was purchased.

For their part, the respondents contend on two bases that there was no dispute as to the coverage provided them by the policy. First, they contend that, as a matter of law, the appellant could not rely on the express language of the policy limiting their recovery to their insurable interest at the time of loss because the valued policy statute, § 379.140, estopped it from denying them the loss coverage of $35,000 they purchased, even though their ownership interest in the subject property that existed at the time of purchase had changed to a mortgage interest at the time of loss. They further contend that, even if § 379.140 did not work to effectively void this express limitation of the policy, they were still entitled to payment of loss benefits of $35,000 because, under the undisputed facts, their recoverable insurable interest was not limited to their mortgage interest. In this respect, they argue that they had an insurable interest of $35,000 at the time of loss because they would suffer a pecuniary loss in that amount if they breached an alleged oral agreement with their former partner, Appelson, to maintain the $35,000 in insurance coverage on the property after quitclaiming their interest in the property to him. As to these contentions, the appellant asserts that the valued policy statute did not apply where the insurable interest had been materially altered from the time the policy was purchased until the time of loss, and as a result, the express provisions of the policy limiting the respondents' coverage and recovery to their mortgage interest and no other interest were enforceable.

To be entitled to summary judgment under Rule 74.04, the respondents, as the movants, must have established that (1) there was no genuine dispute as to the material facts on which they relied to recover and had the burden of persuasion at trial, and that (2) on these undisputed facts, they were entitled to judgment as a matter of law. Rule 74.04; *ITT Commercial Finance*, 854 S.W.2d at 381. And, as claimants, the respondents must have demonstrated that each and every proof element of their claim for benefits under the contract for insurance was established with undisputed evidence. *ITT Commercial Finance*, 854 S.W.2d at 381.

■ To recover under the policy of insurance for loss by fire, the respondents were required to prove that: (1) the "[appellant] issued its policy to [the respondents] on [the house] covering loss due to [fire]"; (2) "such property was damaged by [fire]"; and, (3) "the policy was in force on the date of such loss." MAI 31.09 [1978 New]; *see also Kauble v. MFA Mut. Ins. Co.*, 637 S.W.2d 831, 832–33 (Mo.App.1982). In addition, if at issue, the insured must prove that he or she had an insurable interest in the insured property at the time the contract of insurance was made and the loss occurred. *Houston Gen. Ins. Co. v. Lackey*, 907 S.W.2d 177, 179 (Mo.App.1995) (*citing DeWitt v. American Family Mut. Ins. Co.*, 667 S.W.2d 700, 704 (Mo. banc 1984)); *Glover v. Missouri Property Ins. Placement Facility*, 676 S.W.2d 66, 69 (Mo.App.1984). This insurable-interest public policy requirement or element of proof is to prevent wagering under the guise of insurance and, thus, prevent the temptation to destroy the insured property. *Lackey*, 907 S.W.2d at 179. Hence, to be entitled to summary judgment on their claim for $35,000 in benefits under the contract of insurance in question, the respondents were required to establish with undisputed facts by pleadings, discovery, or affidavits, each of the aforementioned required elements of proof for their claim of insurance benefits. Rule 74.04(c)(1); *ITT Commercial Finance*, 854 S.W.2d at 381.

The respondents contend that they made a *prima facie* case for summary judgment on their claim for insurance benefits in the amount of $35,000 by establishing with undisputed facts each of the necessary elements of their claim, as set forth, *supra*, entitling them to judgment as a matter of law. And, as such, in order to defeat the respondents' motion for summary judgment, the appellant,

as the non-movant, was required, "to show— by affidavit, depositions, answers to interrogatories, or admissions on file—that one or more of the material facts shown by the movant to be above any genuine dispute is, in fact, genuinely disputed." *ITT Commercial Finance*, 854 S.W.2d at 381. It could not rest upon the mere allegations or denials in its pleading, but was required to set forth in its response to the motion specific facts showing that there was a genuine issue at trial. *Id.*

> For purposes of Rule 74.04, a 'genuine issue' exists where the record contains competent materials that evidence two plausible, but contradictory, accounts of the essential facts. A 'genuine issue' is a dispute that is real, not merely argumentative, imaginary or frivolous. Where the 'genuine issues' raised by the non-movant are merely argumentative, imaginary or frivolous, summary judgment is proper.

*Id.* at 382.

As to the genuine issue it alleges it raised to defeat the respondents' motion for summary judgment, the appellant does not dispute that the respondents established with undisputed evidence the required elements of their claim for the payment of "some" loss benefits under the policy, including the fact that the respondents had an insurable interest in the property at the time of the insurance contract's making and their loss. The dispute in this case, as to the respondents' entitlement to summary judgment on their claim, centers around their contentions that the valued policy statute applied to estop the appellant from denying coverage of $35,000, or in the alternative, that their insurable interest at the time of loss was equal to the policy limits as a result of their oral contract with Appelson and their potential liability thereon. We will address each of these issues separately.

### A. Application of Valued Policy Statute, § 379.140

In contending that the express terms of the parties' insurance contract limited the respondents' loss to their $7,400 mortgage interest, the appellant points to the following subsections of Section I of the insurance contract concerning "Conditions":

> 2. AMOUNT OF INSURANCE.
>
> We will not pay more than the smaller of the following:
>
> a. the insurable interest the insured has in the property;
>
> b. the amount of coverage shown on the Information Page;
>
> c. the amount determined as set forth by the settlement option which applies in this policy;
>
> d. with respect to a loss to a dwelling under construction the amount on the Information Page will be reduced to equal the amount actually spent on the dwelling at the time of loss.
>
> 9. MORTGAGEE.
>
> Loss shall be payable to any mortgagee named in the Information Page, to the extent of their interests and in the order of precedence. Mortgagee includes a trustee under a trust deed or a contract seller under a land contract.

As to these subsections, the respondents contend that, to the extent they limit their recovery to their $7,400 mortgage interest, as the appellant asserts, they are unenforceable because such a limitation would violate the underlying public policy of the valued policy statute, which is "to *prevent insurance companies from taking reckless risks* in order to obtain large premiums by advising them in advance that they would be held to the value agreed upon when the policy was issued." *DeWitt*, 667 S.W.2d at 708 (*quoting Gamel v. Continental Ins. Co.*, 463 S.W.2d 590, 593 (Mo.App.1971)). And, as stated in *Community Title Co. v. Safeco Insurance Co. of America*, 795 S.W.2d 453, 463 (Mo.App.1990), the "purpose behind the valued policy legislation is to prevent overinsurance." We would agree that if the public policy of the statute is violated by giving the subsections 2 and 9 of the policy the effect as urged by the appellant, then they would be unenforceable. *See MFA Mut. Ins. Co. v. Southwest Baptist College, Inc.*, 381 S.W.2d 797, 803 (Mo.1964) (holding that "[t]hese 'valued policy' statutes become a part of each contract of insurance the same as if expressly incorporated in the policy"); *State Farm Mut. Auto. Ins. Co. v.*

*Scheel*, 973 S.W.2d 560, 567 (Mo.App.1998) (holding that contract provisions that violate public policy are unenforceable).

■■ Section 379.140 provides, in pertinent part, that in "all suits brought upon policies of insurance against loss or damage by fire hereafter issued or renewed, the defendant shall not be permitted to deny that the property insured thereby was worth at the time of the issuing of the policy the full amount insured therein on said property...."

> Under these statutes, the insurer is estopped from denying that the value of the insured property at the time the policy was written, was equal to the policy amount. These statutes, in essence, preclude an insurer from questioning the valuation stated in the insurance policy after the loss has occurred, and therefore theoretically encourage insurers to investigate the value of the property when coverage is purchased. By compelling insurers to pay the value agreed upon when the policy was issued, the statutes seek to prevent insurance companies from taking reckless risks in order to obtain large premiums. The statutes impose a duty on the insurance companies to ascertain whether applicants have obtained excessive coverage.

*Community Title*, 795 S.W.2d at 463 (citations omitted). "Absent fraud, misrepresentation or collusion the valuation in the policy is conclusive upon the parties." *DeWitt*, 667 S.W.2d at 708. The valued policy statute acts to estop an insurer from denying that the insured property was worth less at the time of loss than the amount for which it was insured. *West v. Shelter Mut. Ins. Co.*, 864 S.W.2d 458, 460 (Mo.App.1993). However, it does not guarantee that the insured will recover policy limits in every instance. *American Family Mut. Ins. Co. v. Doug Rose, Inc.*, 841 S.W.2d 698, 700 (Mo.App.1992). In this respect, in *G.M. Battery & Boat Co. v. L.K.N. Corp.*, 747 S.W.2d 624, 628 (Mo. *banc* 1988), the Missouri Supreme Court held that:

> The insurer may protect itself by strictly defining the interest covered by its policy, or by obtaining representations or warranties about the state of the title, if it deems this information important. What it can-

not do is to issue a policy, collect the premiums, and then argue that the value of the insured's insurable interest in the property is less than the coverage it underwrites.

*Id.* at 628. As such, the valued policy statute is not an impediment to an insurer's expressly and strictly defining in the contract of insurance an insured's insurable interest under the policy so as to limit his or her coverage.

■ Unfortunately, the foregoing principles, as to the effect of the valued policy statute, do not resolve the issue presented here because the insurable interest held by the respondents at the time they negotiated with and purchased the insurance policy from the appellant was not the insurable interest they held at the time of loss, although, as the appellant points out in its brief, the contract did specifically limit coverage to the insurable interest and provide for coverage in the case of a mortgagee. What we must decide is whether under these circumstances the valued policy statute will apply.

Under the circumstances presented, we fail to see how the valued policy statute would apply to void, as being against public policy, subsections 2 and 9 of the policy of insurance in question here, which when read together limited the respondents' coverage and recovery to the smaller amount of the policy limits and their insurable interest as mortgagees at the time of their loss, rather than their insurable interest at the time the policy was purchased. In the policy of insurance, the parties expressly contracted, for the payment by the respondents of the negotiated premiums, to limit the respondents' coverage and recovery for loss by fire to the insured property to the insurable interest that they had in the property as mortgagees, but not to exceed the policy limits of $35,000. This limitation on the coverage, by defining the insurable interest, was permitted without invoking the protection of the valued policy statute. *Id.* This is so because the purpose for invoking the statute was not present here in that this was not a case of "overinsurance" where the insurer was taking a reckless risk by providing coverage that far exceeded the value of the property in order to obtain large

premiums. *Id.* And, this is not a case where the insurer was attempting to deny that the value of the property was less than the amount for which it was insured. Rather, this is a case of an insurer limiting the insured's coverage and recovery based on the insured's contractually defined insurable interest.

We find that the valued policy statute would not apply where, as here, without notice to the insurer, the insureds materially altered their insurable interest that existed at the time the policy was purchased, but chose not to cancel it and continue to pay the premiums, knowing full well that the policy, by its terms, limited their recovery to their insurable interest as mortgagees. Under such circumstances, we fail to see how the insurer could be convicted of recklessly insuring property at an inflated value to obtain larger premiums, which is the situation the statute was designed to deter. If anything, one would question why an insured would continue to pay premiums for coverage which was negotiated and purchased as to an insurable interest that had subsequently been materially reduced in value.

In contending that the valued policy statute applied to require the appellant to pay them the policy limits, even though their insurable interest at the time the policy was purchased had been materially altered, the respondents rely on *DeWitt v. American Family Mutual Insurance Co.,* 667 S.W.2d 700 (Mo. *banc* 1984). Their reliance is misplaced.

In *DeWitt,* pursuant to a property settlement agreement and dissolution of marriage decree, the wife was ordered to quitclaim her interest in the marital residence to her husband, but failed to do so before his death. *Id.* at 704. Following his death, she moved back into the house and renewed the insurance policy insuring the house against loss by fire. *Id.* Several months later, the house was totally destroyed by fire. *Id.* The wife sought to recover under the policy for her loss; however, the insurer refused payment, claiming that she did not have an insurable interest in the property at the time the policy was purchased or at the time of loss, but only a limited, non-ownership interest. *Id.* at 707.

The wife brought suit in the circuit court for payment of benefits under the policy and for vexatious refusal to pay. She won on her claim for benefits at the trial level and was awarded a judgment for the benefits claimed plus interest and attorney's fees. The court of appeals affirmed in part and remanded in part for further proceedings. *Id.* at 703. The Missouri Supreme Court took transfer. The issue before the Supreme Court was two-fold: (1) Did the wife have an insurable interest?; and (2) If she did, what was the value of the interest for the purpose of determining her coverage and recovery under the policy? The court held that she did have an insurable interest, and, applying the valued policy statute, that the insurer was estopped from denying that the value of her interest was less than the amount of coverage purchased. *Id.* at 706–08.

In contending that the valued policy statute was not applicable, the insurer in *DeWitt* claimed that:

> "(1) the plaintiff's divorce materially altered her insurable interest in the property after the policy was issued, (2) the plaintiff has only a limited insurable interest not based upon ownership; and (3) the insurer did not have adequate knowledge of facts to make an accurate evaluation of plaintiff's interest in the property when the policy was renewed and coverage increased."

*Id.* at 706–07. As to the second contention, the court held that the statute would apply even where the interest of the insured was a "limited or qualified one not predicated upon full ownership." *Id.* at 707. As to the third contention, the court held that it was the insurer's obligation to ascertain the basis of an insured's interest prior to contracting to insure the property, and, given this fact, it could not complain later about the interest being overvalued. *Id.* at 708. As to the insurer's first contention, that the statute would not apply where the insured's insurable interest had been materially altered after the policy was issued, the court never decided whether the statute would apply in such a circumstance because it found that the wife's insurable interest at the time of renewal of the policy, the policy on which the action

was maintained, was the same as her interest at the time of loss. *Id.* at 707. Consequently, *DeWitt* did not answer our question as to whether the valued policy statute applies where the insured's insurable interest is materially altered from the time of making the insurance contract and the time of loss and is not controlling authority, as the respondents contend.

In light of the fact that the valued policy statute did not apply to void the policy's express loss limits, limiting the respondents' coverage and recovery of insurance benefits to their interest at the time of loss, the trial court could not, as it did, rely on its application to provide the basis for its grant of summary judgment to the respondents on their claim for policy limits. As such, unless the respondents' alternative basis for being entitled to judgment on their claim, as a matter of law, is correct, the trial court erred in granting them summary judgment.

### B. Agreement with Appelson

■ The respondents claim that, under the undisputed facts, they were entitled to summary judgment on their claim for insurance benefits, contending that, even if the valued policy statute did not apply, their insurable interest was equal to the policy limits because they were subject to a pecuniary loss in that amount in that they had an oral agreement with Appelson to maintain insurance coverage on the property for the full value of the property of $35,000, which could be the basis for a breach of contract suit by his estate. As to this claim, the appellant contends that there is a genuine dispute of material fact as to whether the respondents had an oral agreement with Appelson to maintain insurance coverage on the property for the full $35,000 and, therefore, the respondents were not entitled to judgment in that amount as a matter of law in reliance on this disputed fact. We agree.

In general, a person has an insurable interest in the subject matter insured where he has such a relation or concern in such subject matter that he will derive pecuniary benefit or advantage from its preservation, or will suffer pecuniary loss or damage from its destruction, termi-

nation, or injury by happening of the event insured against.

*G.M. Battery & Boat Co.,* 747 S.W.2d at 626. An insurable interest in property

'may be a special interest entirely disconnected from any title, lien, or possession.' The issue is not what is the insured's title to the property, but rather, would she suffer pecuniary damage by its loss. Thus, an insurable interest 'may be derived from possession, enjoyment, or profits of the property, security or lien resting upon it, or it may be other certain benefits growing out of or dependent upon it.'

*DeWitt,* 667 S.W.2d at 705 (*quoting American Cent. Ins. Co. v. Kirby,* 294 S.W.2d 556, 561 (Mo.App.1956)). Also, "[i]t is not necessary, to constitute an insurable interest, that the interest would be such that the event insured against would necessarily subject the insured to loss; it is sufficient that it might do so, and that pecuniary injury would be the natural consequence...." *G.M. Battery & Boat Co.,* 747 S.W.2d at 626.

Applying the foregoing rules as to what constitutes an insurable interest to our facts, if the respondents did have a contractual obligation to Appelson to maintain insurance on the property for the full value of the property, their subsequent risk of loss for any failure to maintain the insurance may well have created an insurable interest in the respondents for the policy limits. *See DeWitt,* 667 S.W.2d at 705; *Alexander v. Ennia Ins. Co.,* 771 S.W.2d 917, 919 (Mo.App.1989) (holding that lessees who had an insurable interest in the property in question and who had assumed the risk of loss of the property in the lease agreement were entitled to policy limits of the insurance covering the property). However, to be entitled to judgment for $35,000, as a matter of law, the respondents, as claimants, were required to establish with undisputed evidence by pleadings, discovery, or affidavits that they had the contractual obligation to Appelson they assert. *ITT Commercial Finance,* 854 S.W.2d at 380.

A careful review of the record here indicates that there was a genuine dispute as to whether or not the respondents and Appelson had entered into an oral agreement whereby the respondents were obligated to

him to maintain insurance coverage on the property for the full value of the property. In Appelson's affidavit submitted by the respondents, he stated that an additional term of his agreement to purchase the respondents' interest in the property was the respondents' "undertaking and commitment to assist in the transition of insurance coverage to protect my [Appelson's] interest in the property." He further stated that "I am aware of the fact that the property was destroyed by fire shortly after my agreement with . . . [the respondents] and I intend to hold . . . [them] responsible for any failure on . . . [their] part to provide insurance coverage as promised." Yet, in his deposition, Appelson testified that he had no plans to sue the respondents over anything or to make a claim against them and that he did not believe he had ever discussed insurance on the property in question with them either before, during, or after he purchased the respondents' interest. This contradiction clearly created a genuine dispute as to whether the respondents and Appelson had entered into an oral agreement to maintain insurance on the house, as the respondents claim, a fact on which they now assert they rely to be entitled to summary judgment, a dispute which would defeat the respondents' motion for summary judgment.

Even if the agreement with Appelson was undisputed, there would still be a dispute as to whether the respondents' claimed insurable interest arising from this fact would control in light of the fact the policy of insurance appears to expressly limit the respondents' coverage, as mortgagees, to their mortgage interest. This, of course, would be a dispute which would have to be decided at trial and would work to also defeat the respondents' summary judgment motion.

For the foregoing reasons, we find that the trial court erred in granting the respondents' motion for summary judgment.

## II.

Having found that the trial court erred in granting the respondents' motion for summary judgment in the amount of $35,000, we next turn to the appellant's claim that the trial court also erred in denying its motion for summary judgment.

As a general rule, "the denial of summary judgment is not a final judgment and therefore is not an issue for appeal," *Missouri Property & Cas. Ins. Guar. Ass'n v. Petrolite Corp.,* 918 S.W.2d 869, 871 (Mo.App.1996), and "[t]his is true even if summary judgment is granted in favor of the other party at the same time." *Id.* at 871. Not discerning any extraordinary circumstance as to why we should vary from the foregoing rule, we decline to review the appellant's claim that the trial court erred in denying its motion for summary judgment.

### Conclusion

The summary judgment of the circuit court for the respondents is reversed and the cause is remanded for further proceedings consistent with this opinion.

All concur.