**PRAIRIE PROPERTIES, L.L.C.,**
**Plaintiff/Respondent,**

v.

**Cynthia J. McNEILL,**
**Defendant/Appellant,**

**William E. Franke, et al.,**
**Defendants/Respondents.**

No. 75114.

Missouri Court of Appeals,
Eastern District,
Division One.

May 11, 1999.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 15, 1999.

Application for Transfer Denied
Aug. 24, 1999.

Charles F. Dufour, Thomas Berndsen, St. Louis, for McNeill.

Thomas Cummings, Jeffery T. McPherson, St. Louis, for Prairie.

Louis F. Bonacorsi, St. Louis, for Paster.

Gerard Hempstead, William Brasher, St. louis, for William Franke & Gannon Partnership 19 L.P.

Terry Pabst, St. Louis, for Gannon Partnership.

F. Guthrie Castle, Jr., Memphis, Edward J. Miller, Jr., St. Louis, for St. Louis Associates & West Pointe, et al.

WILLIAM H. CRANDALL, Jr., Judge.

Defendant, Cynthia J. McNeill,[1] appeals from the trial court's grant of summary judgment in favor of plaintiff, Prairie Properties, L.L.C., in a quiet title action. We affirm.

## TRANSACTIONS INVOLVING THE PROPERTIES

The properties which were the subject of this quiet title action consisted of five separate multi-unit apartment complexes in St. Louis County, Missouri, known individually as West Pointé Apartments, Northwest Village Apartments, Grandview Hills Apartments, Park Ridge Apartments, and Lamplite Apartments (hereinafter col-

---

1. Although there were several other defendants in the action below, as will be set forth later in the facts, Cynthia J. McNeill is the sole appellant. The other defendants are de-nominated as respondents on appeal because they aré adverse parties under Rule 81.03 in that they agree with the judgment of the trial court.

lectively referred to as properties). At all times pertinent to this litigation, William E. Franke (hereinafter Franke) was the sole general partner of defendant, Gannon Partnership (hereinafter Gannon). In February 1983, Gannon entered into a contract to purchase the properties from Amos D. Watson and others (hereinafter collectively referred to as Watson) for $38 million; and then in December 1983, assigned the sales contract to Franke. Franke financed the purchase of the properties with a loan from John Hancock Mutual Life Insurance Company; Series A and B bonds; and Series C bonds, upon which Franke and his wife, defendant, Cynthia J. McNeill (hereinafter McNeill) were personally liable (hereinafter collectively referred to as original financing). The original financing was secured by a lien on the properties evidenced by deeds of trust. The Series A and B bonds required payment of interest only until maturity, while the Series C bonds required an annual minimum principal payment of $100,000.00.

In May 1984, Franke sold the properties to defendant, St. Louis Associates Limited Partnership (hereinafter St. Louis Associates), a limited partnership. St. Louis Associates was the sole limited partner of defendants, West Pointe Limited Partnership, Northwest Village Limited Partnership, Grandview Limited Partnership, Park Ridge Apartments Limited Partnership, and Lamplite Limited Partnership (hereinafter collectively referred to as Project Partnerships). Each of the five Project Partnerships was the record owner of one of the apartments with a like name. Defendants, Kevin W. Kelly and Pentad Properties, Inc., were the two general partners of St. Louis Associates. As part of the consideration for the purchase, Franke received a promissory note (hereinafter wrap note) in the amount of $57.3 million, secured by a lien on the properties evidenced by a deed of trust and security agreement (hereinafter wrap deed of trust). Defendant, Phillip J. Paster, was the trustee under the wrap deed of trust. At the time of the sale to St. Louis Associ-

ates, the properties were subject to various liens secured by various deeds of trust which were senior in priority to the lien of the wrap deed of trust. Payments on the wrap note were used in part to pay the obligations on the original financing and to pay interest to Franke on the difference between the wrap note balance and the principal balance on the original financing.

In March 1986, Franke entered into a loan agreement with Mercantile Bank National Association (hereinafter Mercantile) to borrow up to $6 million on a line of credit (hereinafter loan agreement). The loan agreement permitted Mercantile to "cancel the Line of Credit at any time with or without cause and whether or not [Franke] is in default." The loan was "payable on demand, or on March 1, 1987 if no demand is made." The loan was secured by, among other things, a pledge and an assignment of the wrap note and the wrap deed of trust. Franke endorsed the wrap note and delivered it to Mercantile. Mercantile recorded the assignment. The loan agreement provided that certain events would be considered "events of default," including Franke's failure to make payment on the loan with Mercantile, a default on the wrap note or the wrap deed of trust, or an adverse change in Franke's financial condition. The loan agreement provided that in the event of default, Mercantile could "enforce any of [Franke's] rights under the Collateral Note, Deed of Trust and Guaranty." In the general pledge agreement, executed in conjunction with the loan agreement and promissory note, the wrap note and the wrap deed of trust were listed as the securities pledged as collateral. With respect to Mercantile's rights in the collateral wrap note and deed of trust, the pledge agreement provided in relevant part:

At any time, whether prior to or after default in the payment of any liability of [Franke] to [Mercantile], [Mercantile] may at its option ... have transferred to ... [Mercantile] ... any collateral security and thereafter to exercise all rights

with respect thereto as the absolute owner thereof. . . .

In December 1987, St. Louis Associates did not pay Franke the $100,000.00 which he in turn would have paid to Watson as required under the C Bonds. Franke and Watson declared St. Louis Associates in default under the C Bonds. By February 1988, Franke was seeking refinancing. Although a portion of the Mercantile loan was due and payable on March 1, 1987, and another portion was due and payable on March 1, 1988, Franke requested and received an extension of the maturity date to October 31, 1988. The loan was not paid at that time and Franke informed Mercantile that the proceeds from the refinancing would not be sufficient to pay the loan in full.

In November 1988 and January 1989, a series of transactions occurred with respect to the refinancing. Franke executed deeds of release. He also executed an indemnification agreement. He secured title insurance in connection with the refinancing. Upon Franke's request, Mercantile, as the holder of the wrap note, issued an indemnification letter of credit and agreed to execute deeds of release. The deeds of release executed by Mercantile released the wrap note and the wrap deed of trust and were recorded. St. Louis Associates transferred the properties to Project Partnerships, which then borrowed funds for refinancing. The loans were evidenced by five promissory notes in the combined face amount of $62,694,800.00 and were secured by liens on the properties evidenced by five deeds of trust. The original financing was paid off and the senior deeds of trust were released. Mercantile was paid approximately $4,596,000.00 on its loan with Franke.

In April 1990, Project Partnerships failed to make the scheduled payment on the refinancing notes. On May 1, 1990, Project Partnerships was declared to be in default. In September 1990, Project Partnerships filed voluntary Chapter 11 bankruptcy as to each of the apartment complexes. In January 1997, plaintiff, Prairie Properties, L.L.C. (hereinafter Prairie Properties), purchased from the Secretary of the United States Department of Housing and Urban Development, which was then the holder and owner of the refinancing notes, five notes which were secured by five separate deeds of trust made, executed, and delivered by Project Partnerships as part of the refinancing. At the time it brought this action, Prairie Properties was the holder of the refinancing debt.

## McNEILL'S INTEREST

McNeill married Franke in January 1976. They separated in August 1986 and Franke brought a dissolution of marriage action at that time. In August 1987, McNeill filed a lis pendens, making claim to the wrap note and the wrap deed of trust. In February 1988, the circuit court entered a decree of dissolution awarding McNeill, *inter alia*, a 20 percent interest in the wrap note which interest the court valued at $2,688,000.00. The decree read in pertinent part:

> [McNeill] shall receive 20% of the St. Louis Associates' mortgage note receivable. The percentage ownership interest of each party shall extend to all payments of principal and interest under the terms of the Note and to all rights of ownership in the underlying security in the event of default and foreclosure.

Both parties appealed from the decree. This court affirmed as modified the decree of dissolution in June 1990. *W.E.F. v. C.J.F.*, 793 S.W.2d 446 (Mo.App.1990).

On May 23, 1991, McNeill filed a motion for contempt alleging that Franke had violated the decree of dissolution by participating in the refinancing and thereby impaired her interest in the properties by releasing the wrap deed of trust. After a hearing, the trial court found that Franke had released the wrap note without the written consent of McNeill and had thereby violated the terms of the dissolution decree. The trial court ordered Franke to pay McNeill $20,000.00 per month in in-

stallment payments until a total of $2,515,-280.00 was paid to McNeill.

In October 1992, McNeill brought an action in federal court against Franke and various other defendants, seeking to collect money for the value of her interest in the net proceeds of the wrap note, for judicial foreclosure of her interest in the wrap deed of trust, and for a declaratory judgment that her lien was a first priority lien. In November 1993, she brought an action in the City of St. Louis, seeking damages in tort from various defendants, including Franke, for the injuries she suffered as a result of the refinancing. The federal court dismissed the action filed therein for lack of subject matter jurisdiction. The state court dismissed McNeill's torts claims on the basis of the collateral estoppel effect of the judgment entered in this quiet title action and granted summary judgment against her on the rest of her claims.

## QUIET TITLE ACTION

Prairie Properties brought this quiet title action to determine the respective rights of all parties who had an interest in the properties. Prairie Properties and McNeill both filed motions for summary judgment. The trial court granted summary judgment in favor of Prairie Properties, finding, *inter alia*, that the contempt order against Franke completely satisfied McNeill's interest in the wrap note and the wrap deed of trust and that Mercantile had the right to release the deed of trust.

## STANDARD OF REVIEW

The propriety of summary judgment is purely an issue of law. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Accordingly, the standard of review on appeal regarding summary judgment is no different from that which should be employed by the trial court to determine the propriety of sustaining the motion initially. *Id.* Summary judgment is designed to permit the trial court to enter judgment, without delay, where the moving party has demonstrated the right to judgment as a matter of law. *Id.* Summary judgment is particularly appropriate if the issue to be resolved is the construction of a contract that is unambiguous on its face. *Daniels Exp. and Transfer Co. v. GMI Corp.*, 897 S.W.2d 90, 91–92 (Mo.App. E.D.1995).

## DISCUSSION

In her first point, McNeill contends the trial court erred in denying her motion to dismiss and in the alternative her motion to stay because Prairie Properties' action was barred by the doctrine of lis pendens. We have reviewed the record with respect to this claim and find no error of law appears. An opinion would have no precedential value. McNeill's point is denied pursuant to Rule 84.16(b).

McNeill challenges the trial court's grant of summary judgment in favor of Prairie Properties on several grounds in the remaining points on appeal. The salient issue, however, is contained in her third point, which raises the issue of whether Mercantile had the right, under the loan agreement, to release the wrap note and the wrap deed of trust. McNeill argues Mercantile ignored her interest in the wrap note when it released the wrap note and the wrap deed of trust.

A loan agreement is construed under the same rules of construction as apply to any other contract. In construing the language of a contract, the words are afforded their ordinary and popular meaning. *Animal Protection, Educ. and Information Foundation v. Friends of the Zoo of Springfield, Mo., Inc.*, 891 S.W.2d 177, 179 (Mo.App. S.D.1995). Where a contract uses plain and unequivocal language, it will be enforced as written. *Smith v. Mann, Poger & Wittner, P.C.*, 882 S.W.2d 164, 167 (Mo.App. E.D.1994). When several instruments are made at the same time and relating to the same subject matter, they may be read together as one contract, and recitals in one may be explained by reference to the other. *Ringstreet Northcrest,*

*Inc. v. Bisanz*, 890 S.W.2d 713, 718 (Mo. App. W.D.1995).

■ Here, the loan agreement granted Mercantile the ability to enforce any of Franke's rights under the wrap note or the wrap deed of trust in the event of default. Franke endorsed and delivered the wrap note to Mercantile, thereby transferring the wrap note to Mercantile. *See* Section 400.3–201(a), RSMo (1994). Mercantile thus became the holder of the wrap note. *See id.* Because Mercantile had possession of the wrap note, it also had a perfected security interest in the wrap note. *See* Section 400.9–305, RSMo (Cum.Supp. 1997). Once the transfer of the wrap note occurred, the general pledge agreement executed by Franke in conjunction with the loan agreement gave Mercantile the authority to exercise all rights with respect to the wrap note and the wrap deed of trust as "the absolute owner thereof" either "prior to or after default."

In this case, several events of default, as defined in the loan agreement occurred. First, there was a default under the collateral wrap note, in that St. Louis Associates did not make the scheduled payment of $100,000.00 due on the C Bonds. Second, there was a default under the loan agreement itself in that Franke did not pay Mercantile when the note became due and payable. Whether Mercantile actually declared a default is irrelevant. The only relevant inquiry is whether there was an event of default under the terms of the loan agreement, such that Mercantile could exercise its rights under the loan agreement, including its right to release the collateral wrap note and wrap deed of trust.

McNeill contends Mercantile could not release the wrap note and wrap deed of trust because she had an interest therein as a result of the 20 percent interest awarded to her in the decree of dissolution of her marriage to Franke. This argument is without merit. Mercantile and Franke entered into the loan agreement in 1986, five months prior to the filing of the dissolution action. McNeill was not a party to the loan agreement. In conjunction with the loan agreement, Franke transferred the wrap note to Mercantile. At the time of transfer, Franke was the sole owner, holder, and payee of the wrap note; McNeill had no interest therein. McNeil's interest in the wrap note and the wrap deed of trust arose when the dissolution decree was entered in 1988. *See W.E.F.*, 793 S.W.2d at 446. Mercantile had a perfected security interest in the wrap note prior to the decree of dissolution and thus its interest was superior to McNeill's. *See* Section 400.9–312(5)(a), RSMo (Cum Supp. 1997). Mercantile's interest in the wrap note was not altered by the decree of dissolution. Any rights McNeill received pursuant to the decree of dissolution were inferior to Mercantile's perfected security interest in the wrap note.

Mercantile had the right to release the wrap note and the wrap deed of trust, which Franke pledged as collateral. The terms of the loan agreement between Franke and Mercantile gave Mercantile the right to do so. Thus Mercantile's release of the wrap note and the wrap deed of trust was proper and effective; and the refinancing deeds of trust, now owned by Prairie Properties, have the priority lien on the property. Prairie Properties, therefore, was entitled, as a matter of law, to have summary judgment entered in its favor in its quiet title action. McNeill's third point is denied.

In her other points on appeal, McNeill challenges the trial court's grant of summary judgment on other grounds: to wit, the doctrine of abatement barred the present action (Point II); commercial necessity for the refinancing did not justify the release of the wrap note without her consent (Point IV); there was no waiver by acquiescence on her part (Point V); and the contempt order precluded the grant of summary judgment (Point VI). In view of our holding that summary judgment was proper because Mercantile had the right to release the wrap note and the wrap deed of trust and its release was effective, we

need not address these points on appeal. Points two, four, five, and six are denied.

In her final point, McNeill charges error in the trial court's denial of her motion for summary judgment. The denial of a motion for summary judgment is not an appealable order even where the trial court grants an appealable summary judgment to the other party. *Avanti Petroleum, Inc. v. St. Louis County, Mo.*, 974 S.W.2d 506, 509–510 (Mo.App. E.D.1998). McNeill's seventh point is denied.

The judgment of the trial court is affirmed.[2]

JAMES A. PUDLOWSKI, P.J., and CLIFFORD H. AHRENS, J., concur.

2. On appeal, several motions by various parties were filed. Appellant filed a motion to file a supplemental legal file. Various respondents filed a motion to strike the supplemental legal file, a motion for sanctions, and motions to strike portions of appellant's reply brief. We grant appellant's motion to file the supplemental legal file and deny all the motions filed by respondents.