Linda M. SANDERS, Appellant,

v.

INSURANCE COMPANY OF NORTH AMERICA, Cigna Insurance Company, ABF Freight System, Inc., Respondents.

No. WD 57288.

Missouri Court of Appeals, Western District.

Jan. 16, 2000.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 27, 2001.

Application to Transfer Denied April 24, 2001.

Dennis E. Egan, Kansas City, for appellant.

Paul L. Wickens, James M. Yeretsky, Christopher L. Heigele, Kansas City, Alan E. Coon, Olathe, KS, Mark Harris, Kansas City, for respondent.

Before EDWIN H. SMITH, Presiding Judge, ROBERT G. ULRICH, Judge and JOSEPH M. ELLIS, Judge.

ELLIS, Judge.

Linda M. Sanders, appellant, is the widow of George D. Sanders. Mr. Sanders was employed as a semitractor-trailer driver for Arkansas Best Freight Systems, Inc. ("ABF"). On October 13, 1986, Mr. Sanders was driving an ABF truck in southeast Missouri when the driver of another semitruck, Jerry Wayne Page, lost control of his vehicle, crossed the centerline, and struck the truck Mr. Sanders was driving head-on. Mr. Sanders died from the injuries he sustained in the automobile accident. Mr. Page was also killed in the accident, and it was later determined that he was an uninsured motorist.

In September 1987, Mrs. Sanders entered into a settlement agreement with ABF, Arkansas Best Corporation ("ABC"), and the Insurance Company of North America ("INA").[1] Pursuant to the settlement agreement, she collected $25,000.00, which was represented to be the limit of liability under the uninsured motorist provision of the insurance policy that covered Mr. Sanders' truck. The settlement agreement was approved by a judgment of the Circuit Court of Cape Girardeau County, Missouri, on September 11, 1987.

In 1992, Mrs. Sanders filed suit against ABF, INA, and Cigna Insurance Company.[2] Mrs. Sanders' amended petition generally alleged that the defendants had represented to her, first, that ABF's insurance policy did not provide uninsured motorist coverage and, thereafter, that the policy did provide such coverage but the limit of liability was $25,000.00. She further alleged that as a result of these representations she entered into the settlement agreement that was subsequently approved by the Circuit Court of Cape Girardeau County. The amended petition also alleged that these representations were untrue and that the policy provided uninsured motorist coverage with either no limit to that coverage or a limit of $1,000,000.00. In the first count, she prayed that the court declare the prior settlement agreement null and void as a result of fraudulent or negligent misrepre-

---

1. ABF is an interstate fleet trucking company with its principal place of business in Fort Smith, Arkansas. It is authorized to transact business in the state of Missouri. ABF is a wholly owned subsidiary of Arkansas Best Corporation ("ABC"). ABC is a Delaware Corporation engaged in the interstate trucking business with its principal place of business in Fort Smith, Arkansas.

INA is a Pennsylvania corporation with its principal place of business in Philadelphia, Pennsylvania, and it is registered to do business in the state of Missouri. INA underwrites insurance policies on a nation-wide basis. INA provided a policy of commercial auto insurance to ABF that was in effect on the date of Mr. Sanders' death.

2. Cigna Insurance Company ("Cigna Ins. Co.") is a California corporation with its principal place of business in Philadelphia, Pennsylvania. Cigna Corporation ("Cigna Corp.") is a parent company for all the Cigna Property & Casualty Group of Companies ("Cigna P & C"). Two of the defendants in this case, Cigna Ins. Co. and INA, are members of the Cigna P & C Group of Companies. However, Cigna Ins. Co. and INA are separate and distinct corporate entities. INA is not, and has never been, the parent corporation of Cigna Ins. Co. Cigna Ins. Co. does not own any of the issued and outstanding shares of stock in INA.

sentations and that the court set aside that agreement and award her damages equal to the actual limits of liability under the uninsured motorist coverage.. In Count II, she prayed for a wrongful death judgment and that the insurance defendants be held liable for damages under a separate insurance policy and for vexatious refusal to pay pursuant to Sections 375.296 and 375.420.[3] Finally, in Count III, Mrs. Sanders asked the court to declare the judgment entered by the Circuit Court of Cape Girardeau County approving the settlement to be null and void as a result of fraudulent misrepresentations and asked the court to award her damages equal to the limits of liability of the uninsured motorist coverage.

The defendants all filed answers in which they generally denied Mrs. Sanders' allegations. In addition, INA and Cigna Ins. Co. filed a cross-claim against ABF for reformation of the insurance policy issued to ABF so as to limit uninsured motorist coverage to the statutory minimum, and they filed a counterclaim for a declaratory judgment. In its response to the cross-claim for reformation, ABF joined INA and Cigna Ins. Co. in requesting reformation of the policy. As will be explained in more detail, *infra*, the trial court found all issues in favor of the defendants, and Mrs. Sanders brings this appeal.

## BACKGROUND

I. The Insurance Policies

In 1979, INA began underwriting automobile liability insurance, comprehensive general liability insurance, and workers' compensation insurance for ABC on a nation-wide basis. Before any policies were issued, a written proposal was provided by INA to ABC setting forth in general terms the coverage provided by the policy and the premiums charged. As to liability limits and uninsured motorists (UM) coverage, the proposal limited both: "Limits of liability $400,000.00. Combined single limits, including statutory minimum P.I.P. and U.M. were [sic] applicable."

ABC paid the premium on behalf of its subsidiary, ABF, and INA issued policy number ISA 1017 with ABF as the named insured. The policy itself did not specify limits on the UM coverage. But the cover note for the initial policy, number ISA 1017, states that the liability limits for UM coverage are the statutory minimum where applicable.

This policy initially covered the policy year December 31, 1979, through December 31, 1980. It was renewed each year from December 31, 1980, through December 31, 1984. In letters and renewal quote proposals during the period from 1980 through 1984, there was consistent mention that liability limits on UM were at the statutory minimum.

On December 31, 1984, INA renewed coverage to ABC using a different policy, number ISA 1400, which is the policy at issue in this case. Policy number ISA 1400 was initially issued to ABC for the three-year policy period beginning December 31, 1984, and ending December 31, 1987. The declarations page of the policy limited general liability recovery to $1,000,000.00 per accident or loss. The declarations page did not set forth a dollar-limit for UM coverage and merely stated that UM coverage was included by placing "INC" under the limits column. Under "covered autos," the declarations page included the numerical designation 6 for uninsured motorist insurance. The document defines the designation "6" as:

---

**3.** All statutory references are to RSMo.1994    unless otherwise indicated.

OWNED AUTOS SUBJECT TO A COMPULSORY UNINSURED MOTORIST LAW. Only those autos you own which, because of the law in the state where they are licensed or principally garaged, are required to have and cannot reject uninsured motorist insurance. This includes those autos you acquire ownership of after the policy begins provided they are subject to the same state's uninsured motorists' requirement.

A letter dated December 6, 1984, quoting automobile liability insurance for ABF stated, "we intend to provide as close as possible a duplication of covers [sic] as you presently have." In the cover note binding coverage dated December 18, 1984, for policy ISA 1400, the description of the policy states, "comprehensive auto liability, including minimum required; P.I.P.-Uninsured Motorists." In a letter December 13, 1985, for the policy period beginning December 31, 1985, through December 31, 1986, INA provided a quote for renewal of ISA 1400. This letter stated that as to general coverages and forms "except for changes in statutory requirements, we intend to keep the coverage as is...."

INA and all the Cigna P & C Group of Companies are members of the Insurance Services Office (ISO) and policy number ISA 1400 is a policy prepared in accordance with policy forms developed by the ISO. ISO set forth guidelines on how policies using its form should be processed and issued. ISO has no regulatory authority, but is merely an advisory organization. Endorsements were commonly formulated by the ISO and distributed to insurance companies for their use. These endorsements are not distributed to named insureds.

There were several endorsements to policy ISA 1400. Endorsement CA 2104, with an effective date of December 31, 1985, was titled "Changes in Uninsured Motorists—Insurance Missouri." This endorsement did not limit UM coverage except to say "the most we will pay for all damages resulting from any one accident is the limit of uninsured motorist insurance shown in the declarations." As noted earlier, the declarations page did not set forth a dollar-limit for UM coverage. Endorsement CA 2X17 is a generic endorsement added to policy ISA 1400 setting up the parameters of the policy's UM coverage and it contains language identical to that in endorsement CA 2104. Endorsement CA 2107 is a multi-state split limit endorsement for UM coverage setting the limits at the minimum statutory limits. It states that bodily injury recovery under UM coverage is limited to the "minimum" for each person and is limited to the "statutory limits" for each accident. Endorsement CA 2107 was part of policy number ISA 1400 at the time of Mr. Sanders' accident.

In August 1984, and effective September 1, 1984, the ISO designated endorsement CA 2156 as the new split-limit endorsement for UM coverage in the state of Missouri. This endorsement specifically limits UM coverage to the statutory minimums of $25,000.00 per person and $50,000.00 per accident. As of October 13, 1986, the date of Mr. Sanders' accident, endorsement CA 2156 was not a part of policy ISA 1400, but rather Endorsement CA 2107 remained on the policy.

CAL 233569 is an "underlyer memorandum" prepared in conjunction with the master policy, ISA 1400, and filed in order to meet the state of Texas' requirements for a separate experience rating and premium allocation for Texas vehicles and risks. This memorandum was issued in the name of INA of Texas, and not INA. INA of Texas is a separate corporate entity. The memorandum has a declarations page indicating that UM coverage is pro-

vided. Endorsement DA–1588C is attached to the memorandum as an uninsured/underinsured motorist endorsement setting limits for those coverages at $1,000,000.00 for each person, each accident, and each occurrence. The endorsement describes the insured motor vehicles as "[a]ny automobile owned by the named insured." ABC was the named insured on CAL 233569 for the policy period December 31, 1984, through December 31, 1987. As discussed, *infra,* Mrs. Sanders contended that this was a separate policy of insurance from ISA 1400 and provided separate uninsured motorist coverage of $1,000,000.00.

## II. Negotiations and Settlement

Attorney John Heisserer represented Mrs. Sanders in matters relating to Mr. Sanders' death. On April 17, 1987, he wrote a letter to INA requesting the UM policy limits for ISA 1400 so that a claim could be submitted on Mrs. Sanders' behalf. On May 4, 1987, Mr. David Holeman, ABF's account manager at INA, responded by letter to Mr. Heisserer's inquiry and stated that the ABC policy did not, through endorsement or otherwise, provide UM coverage for the state of Missouri. Mr. Heisserer knew that UM coverage could not be rejected in Missouri so he followed up on the letter of May 4, 1987, by calling Mr. Holeman. In that conversation, Mr. Holeman agreed "that if Missouri was [a] state which did not allow waiver of the uninsured motorist coverage that his policy would indeed have the coverage." Mr. Holeman suggested that Mr. Heisserer contact Mr. Dennis Roling at ABF if he had any further questions. After that conversation, Mr. Heisserer wrote Mr. Roling a letter stating that ISA 1400, pursuant to Missouri statute, contained the minimum of UM coverage, $25,000.00, and demanded payment of the

full UM coverage limit to his client, Mrs. Sanders.

Subsequently, ABC's casualty insurance manager forwarded Mr. Heisserer's demand to attorney Sam Rynearson, a partner in the St. Louis law firm of Evans & Dixon. In the forwarding letter, ABC noted the demand for $25,000.00 in uninsured motorist coverage and requested a written opinion as to whether the money was owed, and if not, specific instructions as to how to defend the claim. On July 24, 1987, Mr. Heisserer spoke with Mr. Rynearson who agreed that Missouri was a state that required all policies to contain at least statutory minimum UM coverage. Mr. Heisserer and Mr. Rynearson agreed in that conversation that the amount of uninsured motorist coverage available in Missouri to Mrs. Sanders under ISA 1400 was $25,000.00. Mr. Heisserer and Mr. Rynearson reached a settlement agreement on behalf of their respective clients by which the $25,000.00 in uninsured motorist coverage would be paid to Mrs. Sanders.

On August 25, 1987, INA and Mrs. Sanders petitioned the Circuit Court of Cape Girardeau County for its order approving the wrongful death settlement. On September 11, 1987, a hearing was held, and the court approved the settlement; Mrs. Sanders received $25,000.00 from INA, ABC and ABF, and in return, she signed an "Acknowledgement and Satisfaction of Judgment" acknowledging a "full and complete satisfaction of the judgment on damages rendered." In addition, Mrs. Sanders signed a "Release and Trust Agreement" stating that she had received $25,000.00 from INA, ABC and ABF "in full settlement and final discharge of all claims for uninsured motorist coverages under policy number ISA 1400, Insurance Company of North America."

### III. The Current Litigation

As noted previously, Mrs. Sanders filed this action in 1992. The defendants filed answers generally denying the allegations of her petition. In addition, INA and Cigna Ins. Co. filed a cross-claim against ABF for reformation of policy ISA 1400 to limit UM coverage to the statutory minimum. ABF responded to the cross-claim by joining in the request for reformation of the policy. In addition, the defendants filed a counter-claim for declaratory judgment praying for a declaration that policy number ISA 1400 provided only $25,000.00 of uninsured motorist coverage.

The defendants moved to trifurcate the litigation. The motion was granted and trial was divided into three phases: (1) a bench trial to decide the equitable issues of rescission of the settlement agreement and reformation of policy number ISA 1400, as well as the declaratory judgment action; (2) a jury trial on the issues of wrongful death and vexatious refusal to pay in regard to CAL 233569; and, (3) a trial on the issue of fraud.

The first phase of the cause was a bench trial that began on January 20, 1998, and concluded on February 19, 1998. At the close of Mrs. Sanders' evidence, upon motion made, the court dismissed Mrs. Sanders' claims as to Cigna Ins. Co., and its attorneys did not participate in the case any further.[4] At the close of all the evidence, the court ruled against Mrs. Sanders on her claim of rescission of the 1987 settlement agreement. The court ruled in favor of INA and ABF on their reformation claims and their requests for declaratory judgment. The court found that it was always the intent of the defendants to have UM coverage on policy ISA 1400 at the minimum statutory limits. The court reformed the policy to include Endorse-ment CA 2156 effective as of December 31, 1984, so as to more fully reflect the intention of the parties that said policy of insurance would provide uninsured motorist coverage in the state of Missouri in the statutory limit amounts of $25,000.00 per person and $50,000.00 per occurrence. Further, the court granted defendants claims for declaratory judgment declaring that policy number ISA 1400 provided only $25,000.00 of uninsured motorist coverage for all claims by Mrs. Sanders.

The second phase of the case was scheduled to be tried on April 26, 1999. This phase involved Mrs. Sanders' wrongful death claim for UM benefits pursuant to the "underlyer memorandum" CAL 233569 as well as her claim for vexatious refusal to pay benefits pursuant to CAL 233569. INA was the only defendant involved in this phase of the cause. INA filed a motion for summary judgment on both issues presented by Mrs. Sanders and filed a motion to dismiss for lack of subject matter jurisdiction for failure to join INA of Texas as a necessary and indispensable party. Mrs. Sanders filed a cross motion for partial summary judgment asserting that CAL 233569 provided coverage for the accident at issue. In response, INA filed a separate motion for summary judgment claiming that CAL 233569 did not provide coverage for the accident. Subsequently, the court granted INA's original motion for summary judgment finding there were no genuine issues of material facts regarding the wrongful death and vexatious refusal to pay claims. The court found a lack of subject matter jurisdiction by reason of failure to join INA of Texas as a necessary and indispensable party. The court also sustained INA's separate motion for summary judgment, thereby

---

4. It was deemed that Cigna Ins. Co.'s claims for reformation and declaratory judgment were abandoned and those claims were dismissed by the court.

overruling Mrs. Sanders' motion for partial summary judgment and effectively finding that CAL 233569 did not provide UM benefits for the accident at issue. The court then concluded that the disposition of these claims in defendant's favor precluded Mrs. Sanders' fraud claims in the third phase of the litigation, and those claims were dismissed.

## ANALYSIS

Mrs. Sanders raises twelve points of error on appeal. Initially, we note that Mrs. Sanders' points 2, 3, 4, and 11 assert trial court error in denial of her motion for summary judgment. The denial of a motion for summary judgment is not a final judgment and is therefore not an appealable order. *Prairie Properties, L.L.C. v. McNeill*, 996 S.W.2d 635, 641 (Mo.App. E.D.1999); *Gorman v. Farm Bureau Town & Country Ins. Co. of Missouri*, 977 S.W.2d 519, 527 (Mo.App. W.D. 1998) (quoting *Missouri Property & Casualty Ins. Guar. Ass'n v. Petrolite Corp.*, 918 S.W.2d 869, 871 (Mo.App. E.D.1996)). This is true even when the appeal is taken from the final judgment in the case. *Reis v. Peabody Coal Co.*, 935 S.W.2d 625, 632 (Mo.App. E.D.1996). Likewise, the denial of a motion for summary judgment is not appealable when the trial court contemporaneously grants summary judgment for the opposing party. *McNeill*, 996 S.W.2d at 641; *Gorman*, 977 S.W.2d at 527 (quoting *Petrolite Corp.*, 918 S.W.2d at 871); *Eagle Boats, Ltd. v. Continental Ins. Co. Marine Office of America Corp.*, 968 S.W.2d 734, 737 (Mo.App. E.D.1998). Accordingly, points 2, 3, 4, and 11 are denied.

Fundamental to analysis of most of Mrs. Sanders' remaining eight points on appeal is the single issue of whether a material misrepresentation was made to her on which she relied, to her detriment, in entering into the 1987 settlement agreement.

Accordingly we will address this issue and will touch on Mrs. Sanders' specific points only to the extent they are unresolved by that analysis.

In her claim in Count I of the amended petition, seeking rescission of the settlement agreement of 1987, Mrs. Sanders asserted that there were two separate material misrepresentations made by the respondents. First, she argued that David Holeman's representation, in his letter of May 4, 1987, that policy number ISA 1400 did not provide uninsured motorist coverage, was untrue. Second, she contended that the later representations made both by Mr. Holeman and Attorney Rynearson that policy number ISA 1400 only provided UM coverage to the extent of the statutory minimums of $25,000.00 per person and $50,000.00 per accident were false. She contends that she relied on both representations to her detriment in entering into the 1987 settlement agreement. Accordingly, she claims that the trial court erred in failing to rescind that settlement agreement.

When reviewing a court-tried case, we will affirm the decision of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We review the evidence and all reasonable inferences in the light most favorable to the trial court's judgment and disregard all contrary evidence and inferences. *Mac-Currach v. Anderson*, 678 S.W.2d 459, 463 (Mo.App. E.D.1984)(*quoting Ware v. Ware*, 647 S.W.2d 582, 584 (Mo.App. E.D.1983)). We defer to the trial court's credibility determinations, recognizing that the court is free to accept or reject all, part or none of the testimony presented. *Id.* (*quoting Ware*, 647 S.W.2d at 583–84). This deference is accorded even if there is evidence

which might support a different conclusion. *Id. (quoting Ware,* 647 S.W.2d at 584).

■ Mrs. Sanders sought to avoid the settlement agreement and release by claiming that she was induced to sign the documents through fraudulent or negligent misrepresentations. Having admitted that she signed the instruments, she had the burden of proving their invalidity. *Bogus v. Birenbaum,* 375 S.W.2d 156, 160 (Mo. 1964). To make a submissible case of fraudulent misrepresentation, the following elements must be proven:

(1) a false, material representation;

(2) the speaker's knowledge of its falsity or his ignorance of its truth;

(3) the speaker's intent that it should be acted upon by the hearer in the manner reasonably contemplated;

(4) the hearer's ignorance of the falsity of the statement;

(5) the hearer's reliance on its truth, and the right to rely thereon; and

(6) proximate injury.

*Gast v. Ebert,* 739 S.W.2d 545, 547 (Mo. banc 1987)(*quoting Huttegger v. Davis,* 599 S.W.2d 506, 511 (Mo. banc 1980)).

■ The elements of a claim of negligent misrepresentation, on the other hand, are derived from the Restatement (Second) of Torts, § 552 (1977). Those elements are:

(1) the speaker supplied information in the course of his business;

(2) because of a failure by the speaker to exercise reasonable care, the information was false;

(3) the information was intentionally provided by the speaker for the guidance of a limited group of persons in a particular business transaction;

(4) the listener justifiably relied on the information; and

(5) due to the listener's reliance on the information, the listener suffered a pecuniary loss.

*Wellcraft Marine v. Lyell,* 960 S.W.2d 542, 546 (Mo.App. W.D.1998). The failure to prove any one of the essential elements of either fraud or negligent misrepresentation is fatal to a claim dependent thereon. *Botanicals on the Park, Inc. v. Microcode Corp.,* 7 S.W.3d 465, 468 (Mo.App. E.D. 1999); *Wellcraft Marine,* 960 S.W.2d at 546.

■ In its findings of fact and conclusions of law, the trial court found that the representation made by David Holeman on or about May 4, 1987, that policy number ISA 1400 did not provide uninsured motorist coverage was a material misrepresentation. But the court also found that neither Mrs. Sanders, nor her attorney, nor anyone else acting on her behalf relied on Mr. Holeman's misrepresentation because Mrs. Sanders' attorney, Mr. Heisserer, was aware that the statutory minimum coverage was mandated by Missouri law. The trial court also found that the misrepresentation was later corrected prior to execution of the settlement agreement when both Mr. Holeman and Attorney Rynearson represented that policy number ISA 1400 provided UM coverage to the extent of the statutory minimums of $25,000.00 per person and $50,000.00 per accident. The trial court further found that the latter representations by Mr. Holeman and Attorney Rynearson were true and could not form the basis for rescission of the settlement agreement. As noted earlier, these claims and the trial court's findings were made during the first phase of the litigation, which was a bench trial.

In reviewing the evidence in a bench trial as provided in our standard of review, *supra,* it is clear that neither Mrs. Sanders nor her attorney relied on David Holeman's representation on or about May 4,

1987, that policy number ISA 1400 did not provide UM coverage. Mr. Heisserer admitted he never relied on Mr. Holeman's letter stating that there was no coverage on policy number ISA 1400. Mr. Heisserer further acknowledged that he knew that Missouri law required insurers to offer UM protection to the extent of the statutory minimums, and indeed, he followed up on Mr. Holeman's representation by calling him. In that conversation, Mr. Holeman acknowledged "that if Missouri was [a] state which did not allow waiver of the uninsured motorist coverage that his policy would indeed have the coverage." Furthermore, Mr. Heisserer was aware that if policy number ISA 1400 contained a UM endorsement for the state of Missouri but did not provide a limit for UM coverage on the policy's declaration page, the UM coverage on the policy would be limited to the statutory minimums. Clearly, there was substantial competent evidence in the record to support the trial court's finding that Mrs. Sanders did not rely on Mr. Holeman's representation of May 4, 1987, that policy number ISA 1400 did not provide UM coverage. Thus, Mrs. Sanders failed to establish the reliance element of a claim for either fraudulent or negligent misrepresentation.

Similarly, it is just as clear that the later representations by Mr. Holeman and Attorney Rynearson that policy number ISA 1400 provided only the statutory minimum UM coverage were true and, therefore, could not form the basis for rescission of the 1987 settlement agreement. Section 379.203 requires uninsured motorist coverage where the uninsured motorist is legally liable to an insured. *Keeler v. Farmers and Merchants Insurance Company,* 724 S.W.2d 307, 311 (Mo.App. S.D.1987). The Court in *Keeler* stated:

> The true public policy involved in our uninsured motorist statute is to see that every insured under such coverage have available the full statutory minimum amount of coverage to exactly the same extent as would have been available had the tortfeasor complied with the minimum requirements of the financial responsibility law.

*Id.*

In this case, the trial court found, and the record amply supports, that INA made a "form E" filing in the state of Missouri for policy ISA 1400 prior to October 13, 1986. Endorsement CA 2107 had been filed with and was approved by the Director of the Missouri Department of Insurance before it was included within ISA 1400 and issued to ABF. Endorsement CA 2107 was a multi-state split limit endorsement for UM coverage setting the limits at the minimum statutory limits. It states that bodily injury recovery under UM coverage is limited to the "minimum" for each person and is limited to the "statutory limits" for each accident.

The record supports the trial court's finding that UM endorsement CA 2156, which was recommended for use in Missouri by the ISO, did not change the intent of the parties and essentially made no change with respect to the UM coverage intended to be provided. Indeed, the only functional difference between endorsement CA 2107 and endorsement CA 2156 was that language in the latter endorsement intended to conform with then recent Missouri Supreme Court decisions pertaining to the stacking of UM benefits, and such language was not at issue in the instant case nor was it relevant to the litigation. The fact that endorsement CA 2107 was no longer recommended for use in Missouri by the ISO does not change the meaning of the endorsement.

Moreover, endorsement CA 2107 clearly reflects the intention of the parties to the insurance policy to limit liability to the

statutory minimums, and, as to the UM coverage provided by the policy, it complied with Missouri law. Use of endorsement CA 2107 with policy ISA 1400 did not create an ambiguity. Rather, it makes clear that UM coverage is provided and that the coverage is limited to the statutory minimums. Accordingly, the trial court did not err in finding that Mr. Holeman's and Mr. Rynearson's representations that the policy provided UM coverage equal to the statutory minimums were true. As they were not false, the representations could not form the basis of a claim for fraudulent or negligent misrepresentation and could not form the basis for rescission of the 1987 settlement agreement.

We turn now to Mrs. Sanders' remaining points on appeal,[5] most of which are disposed of by our determination that no actionable misrepresentations were made by respondents.

▆▆▆▆ In Point I, Mrs. Sanders complains that the trial court erred during the bench trial in failing to limit evidence regarding trucking industry practice in the purchase of uninsured motorist coverage. This evidence went to the issue of reformation of the policy. Since we have found that policy number ISA 1400 was not ambiguous, and on its face limited UM coverage to the statutory minimums, the respondents' request for reformation of the policy was irrelevant to Mrs. Sanders' claims. Therefore, any error in the admission of the evidence was harmless. In a court-tried case it is extremely difficult to predicate reversible error on the erroneous admission of evidence. *Conoyer v. Conoyer*, 695 S.W.2d 480, 482 (Mo.App. E.D.1985). Erroneous admission of evidence only requires reversal where the complaining party is prejudiced. *Id.* Point denied.

In Point V, Mrs. Sanders argues that the trial court erred in finding that respondents made a material misrepresentation regarding coverage under policy ISA 1400 but that it was non-actionable. We have decided this issue, *supra.* Point denied.

Point VI relates to the respondents' efforts to add endorsement CA 2156 to policy ISA 1400, effective as of the inception date, at a time subsequent to her initial claim. As with the previous point, our conclusion that policy ISA 1400 provided only the statutory minimum UM coverage without regard to endorsement CA 2156 renders the point unmeritorious, and it is therefore denied.

In Point VII, Mrs. Sanders contends the trial court erred in granting respondents a declaratory judgment declaring that policy ISA 1400 provided only the statutory minimum UM coverage. This point is likewise without merit due to our decision regarding the lack of actionable misrepresentations but an explanatory note is appropriate. As a result of the bench trial, the court denied Mrs. Sanders' claim for rescission of the settlement agreement, granted reformation of policy ISA 1400 to include endorsement CA 2156 effective as of the inception date of the policy, and also granted respondents a declaratory judg-

---

**5.** Respondents filed a motion to strike Mrs. Sanders' brief for failure to comply with Rule 84.04, particularly Rule 84.04(d) relating to Points Relied On. The motion was taken with the case. We now overrule the motion. Respondent's motion is not without merit. Indeed, most of Mrs. Sanders' points fail to set forth the three components required by Rule 84.04(d). However, we overrule the motion because appeals should be decided on the merits if possible. *Brown v. Hamid*, 856 S.W.2d 51, 53 (Mo. banc 1993). While we certainly do not condone noncompliance with the rules, there is an adequate transcript and legal file in this case, and the briefs sufficiently delineate the issues to permit the case to be decided. *Id.*

ment to the effect that policy ISA 1400 was unambiguous and provided only the statutory minimum UM coverage for Mrs. Sanders' claims. The three judgments are somewhat redundant, but assuming, *arguendo*, that each was necessary from the respondents' perspective, the judgment denying rescission of the settlement agreement was dispositive of Mrs. Sanders' claim, and, therefore, any error in the other two judgments is irrelevant to her case.

Mrs. Sanders' Point VIII complains of the trial court's grant of Cigna Insurance Company's motion for judgment at the conclusion of plaintiff's evidence. At the close of Mrs. Sanders' evidence in the bench trial, Cigna Ins. Co. sought a judgment pursuant to Rule 73.01(a)(2) on the basis that Mrs. Sanders was not entitled to relief upon the facts and the law. This motion has the same effect as submitting the issues on the merits and we will review the trial court's decision to sustain this motion under the standards set forth in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). *Kamil, Decker & Co., P.C. v. SMC Properties, Inc.*, 998 S.W.2d 818, 819 (Mo.App. E.D.1999).

Mrs. Sanders argues that Cigna Ins. Co. was a proper party as an agent, partner, or joint venturer with a properly named insurance company defendant. The problem with this argument is that there is no evidentiary support for it. The only evidence in the record even arguably intimating involvement of Cigna Ins. Co. are several internal company documents bearing the "CIGNA" logo. But the "CIGNA" logo relates to Cigna Corporation, which is the ultimate parent company for numerous subsidiaries, all operating and existing as separate corporate entities, including INA and Cigna Ins. Co. According to Mrs. Sanders' own exhibits, there are at least fourteen subsidiary companies bearing the

name "Cigna" under the Cigna Corporation umbrella. Indeed, Cigna Ins. Co. is a subsidiary of Cigna Corporation's first tier subsidiary, Cigna Property & Casualty Insurance Company, and thus is a second tier subsidiary of the ultimate parent. Mrs. Sanders presented no evidence of agency, partnership or joint venture between Cigna Ins. Co. and INA, or for that matter, INA of Texas. Accordingly, the trial court did not err in granting Cigna Ins. Co.'s motion for judgment. Point denied.

In her ninth point on appeal, Mrs. Sanders contends that the court erred in failing to force Defendants to elect between inconsistent theories of recovery. She argues that the Defendants were allowed to submit their case on two inconsistent theories of recovery: (1) that they were entitled to a declaratory judgment stating that ISA 1400 provided only $25,000 in UM coverage even without endorsement CA 2156 being added to the policy, and (2) that they were entitled to reformation of ISA 1400 to add CA 2156 to the policy.

The point is devoid of merit. As noted previously, the trial court's action in granting respondents reformation of policy ISA 1400 and declaratory relief to the effect that policy ISA 1400 only provided UM coverage to the extent of the statutory minimums is somewhat redundant in light of its denial of Mrs. Sanders' claim for rescission. But any error in doing so is harmless. Mrs. Sanders' case, in Count I, was dependent on a finding of material misrepresentations on which she relied to her detriment so as to entitle her to rescission of the 1987 settlement agreement. The record supports the trial court's finding that there were no actionable misrepresentations including, of necessity, a determination that policy ISA 1400 provided UM coverage only to the extent of the statutory minimums. As far as her claim

is concerned, this ended her case in Count I. The fact that the trial court also granted reformation and declaratory relief to respondents does not help her or hurt her. "[E]rror does not necessarily require reversal. Prejudice must appear." *Goff v. St. Luke's Hosp. of Kansas City*, 753 S.W.2d 557, 566 (Mo. banc 1988); *Rule 84.13(b)*. If there was an error, Mrs. Sanders suffered no prejudice. Point denied.

In Point X, Mrs. Sanders challenges the trial court's rulings with respect to Count II of her amended petition. As noted previously, Count II of the amended petition sought wrongful death and vexatious refusal to pay damages pursuant to the UM coverage of CAL 233569. Count II was premised on the notion that CAL 233569 was a separate policy that provided UM coverage and that INA was liable for payment of benefits on that policy. INA filed a motion for summary judgment, or alternatively to dismiss, based on the closely related concepts that (a) contractual obligations or liabilities cannot be imposed on one not a party to the contract, and (b) necessary and indispensable parties must be joined as parties in litigation. Both motions relied on the trial court's finding that CAL 233569 was issued by INA of Texas, which was a separate and distinct entity from INA. In addition, INA filed a separate motion for summary judgment asserting that CAL 233569 did not provide UM coverage for Mr. Sanders' accident because (a) it was not a separate policy of insurance, and alternatively, (b) even if it was a separate policy, it did not provide coverage for the vehicle Mr. Sanders was operating. The trial court entered alternative judgments in favor of INA on all three motions. We need not address all three alternatives as we find that the trial court did not err in granting INA's separate motion for summary judgment.

■ Appellate review of the grant of summary judgment is essentially *de novo*. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). The propriety of summary judgment is purely an issue of law, and we need not give any deference to the trial court's order granting summary judgment. *Id.* We will uphold the grant of summary judgment if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Legg v. Certain Underwriters at Lloyd's of London*, 18 S.W.3d 379, 383 (Mo.App. W.D.1999).

■ During the bench trial, extensive evidence, both documentary and testimonial, was presented regarding CAL 233569. Mrs. Sanders introduced much of the evidence in an effort to prove that there was a second policy in force at the time of Mr. Sanders' death that provided UM coverage. Her theory was that, because a second policy existed and would have provided additional coverage, the 1987 settlement agreement should be rescinded. As a result, the trial court made certain findings of fact regarding CAL 233569. Among those findings are the following, all of which are amply supported by the record.

The evidence presented in the first phase of trial reflected that CAL 233569 was an underlyer memorandum prepared in order to meet the State of Texas' commercial auto insurance policy regulatory filing requirements for experience rating and premium allocation purposes for all Texas vehicle risks and losses only. Unlike most states, Texas has chosen to calculate its own rates and maintain discreet records regarding automobile exposures in Texas. The Texas Automobile Insurance Services Office (TAISO) is the servicing organization responsible for keeping the data for making the rates and for the administration of the orders of the state

board of insurance. Where a multi-state policy, such as ISA 1400, is being issued, TAISO requires a separate policy be issued on a Texas approved form for the Texas identified units at Texas rates. According to Texas state regulatory law, or "Board Orders," in effect at the relevant times, Texas underlyer policies were not permitted to utilize or include exposure from other states for Texas rating purposes, nor were they allowed to provide coverage for out-of-state risks.

The evidence presented during the first phase of trial also established that when a Texas underlyer policy is issued in conjunction with a multi-state policy, the total premium for the multi-state policy is negotiated, and then the Texas premium is calculated and allocated to the underlyer policy. Thus, the total premium remains the same, but the portion attributable to Texas is reported as being paid for the Texas part of the risk. In fact, underlyer policies are normally issued automatically by insurance carriers, frequently without knowledge of the named insured. Indeed, at the time of Mr. Sanders' accident, no one at ABF was aware of the existence of CAL 233569.

INA relied on these findings made in the first phase of the case, as well as affidavits, deposition testimony, and exhibits in support of its separate motion for summary judgment filed in the second phase of the case. From these latter evidentiary sources, it was established that CAL 233569 was only sent to TAISO and INA's administrative center in Delaware. No other copies were distributed to any entity. Neither ABF nor ABC received a copy of it. CAL 233569 was never signed or counter-signed by INA, INA of Texas, ABF or ABF's broker. CAL 233569 was never discussed or negotiated with ABF, nor did ABF know of its issuance or existence. ABF never consented to its issu-

ance or filing with the State of Texas, and no separate premium was paid or collected in consideration of issuance of CAL 233569.

The evidence clearly supported the trial court's finding that CAL 233569 was not intended to be an enforceable policy of insurance providing coverage separate and independent from ISA 1400. It was intended to and did reference only Texas vehicles, those principally garaged in Texas and used only for local hauling within a fifty (50) mile radius of assigned Texas terminals, so as to comply with Texas regulations for experience rating and premium allocation for Texas vehicle risks and losses.

In opposing a motion for summary judgment, the "non-movant must show by affidavit, depositions, answer to interrogatories, or admissions on file, that one or more of the material facts shown by the movant to be above any genuine dispute is, in fact, genuinely disputed." *Miller v. Big River Concrete, L.L.C.,* 14 S.W.3d 129, 131 (Mo.App. E.D.2000). Accordingly, in her response, Mrs. Sanders sought to establish that there were genuine issues of material fact remaining by referencing deposition testimony, primarily of her expert, and with various documentary exhibits. But her attempts were unsuccessful. Her own expert, Hector DeLeon, testified that CAL 233569: (a) is a Texas form policy, the purpose of which would be to cover all scheduled vehicles that are registered, principally garaged, or located in the state of Texas; (b) that it would not provide coverage if the vehicle Mr. Sanders was operating at the time of his accident was not principally garaged in Texas; and (c) that there was no endorsement that would include Mr. Sanders' unit. The Interoffice memos on which she relies to try to show a separate independent policy recite that CAL 233569 is an "underlyer policy" to

"master policy" ISA 1400. The "Policy Writing Instructions/Tracking Sheet," on which she relies for the same purpose has special instructions to "prepare underlyer policy" and instruction for distribution as follows: "This is an underlyer. No premium to be billed—Copies to be sent to FCC & Texas only. Keep this file inside master ISA 1400." The latter document was prepared on January 8, 1986. Indeed, a careful and thorough review of Mrs. Sanders' "Suggestions in Opposition to INA's Counter Motion for Partial Summary Judgment" and the supporting documentation does not rebut the essential facts that CAL 233569 was intended as an underlyer policy to ISA 1400 in order to comply with Texas regulatory requirements and was not intended as a separate and distinct policy of insurance providing additional coverage.

■■■ No doubt in recognition of this deficiency, in one paragraph of her brief, Mrs. Sanders argues that the extrinsic evidence presented is inadmissible to show the intent of the parties because CAL 233569 is unambiguous. She relies on the proposition that "where there is no ambiguity in the language of a contract, the intent of the parties is to be gathered from the contract alone and extrinsic evidence should not be introduced to show the intentions of the parties." *Daniels Express and Transfer Co. v. GMI Corp.*, 897 S.W.2d 90, 92 (Mo.App. E.D.1995). Therefore, she reasons the policy or underlyer memorandum itself is the only source as to the intent and meaning of the document.

■■■ We do not disagree with the legal principle cited. Rather, we find it inapplicable. The issue is not whether an ambiguity exists in CAL 233569 but rather whether it is a separate, enforceable policy of insurance. Insurance policies are contracts. *American States Ins. Co. v. Broeckelman*, 957 S.W.2d 461, 467 (Mo. App. S.D.1997). Thus, the question here is whether CAL 233569 is in fact a separate contract. The existence of a contract requires a "meeting of the minds" which a court determines by looking to the intention of the parties as revealed or expressed in their acts or words. *Gateway Exteriors, Inc. v. Suntide Homes, Inc.*, 882 S.W.2d 275, 279 (Mo.App. E.D.1994). "Whether a contract is made and, if so, what the terms of that contract are, depend upon what is actually said and done and not upon the understanding or supposition of one of the parties." *Id.* Therefore, the extrinsic evidence presented to the trial court and upon which it relied in granting INA summary judgment was admissible.

■■■ The elements of a contract are: (1) parties competent to contract; (2) subject matter; (3) legal consideration; (4) mutuality of agreement; and (5) mutuality of obligation. *Hyatt v. Trans World Airlines, Inc.*, 943 S.W.2d 292, 296 (Mo.App. E.D.1997). "Mutuality of agreement" implies mutuality of assent or a meeting of the minds by the parties to the terms of the contract. *Abrams v. Four Seasons Lakesites/Chase Resorts, Inc.*, 925 S.W.2d 932, 937 (Mo.App. S.D.1996)(*quoting L.B. v. State Committee of Psychologists*, 912 S.W.2d 611, 617 (Mo.App. W.D.1995)). And it is essential to the existence of a contract of insurance that the minds of the parties shall have met on all the essential terms of the contract. *Chailland v. MFA Mutual Insurance Co.*, 375 S.W.2d 78, 81 (Mo. banc 1964).

On the record before us, there was no genuine dispute over the fact that there were no negotiations, proposals, intent, meeting of the minds, agreement, acceptance of terms or consideration between ABF and any insurer for the issuance of any policy of insurance other than ISA 1400. Likewise, there was no genuine dispute over the fact that CAL 233569 is an underlyer memorandum to ISA 1400 is-

sued unilaterally for the sole purpose of compliance with Texas regulatory requirements. Accordingly, the trial court did not err in granting INA's separate motion for summary judgment. Point denied.

In her final point, Mrs. Sanders argues the trial court erred in dismissing Count III of her amended petition. Count III prayed to set aside the judgment entered on September 11, 1987, in the circuit court of Cape Girardeau County approving the settlement agreement based on the alleged fraudulent misrepresentations asserted in Count I. The court dismissed Count III for failure to state a claim upon which relief could be granted because the fraudulent representations Mrs. Sanders alleged had been judicially determined non-actionable. We have already determined the trial court did not err in that judicial determination. Accordingly, the trial court did not err in dismissing Count III. Point denied.

The trial court's judgment is affirmed.

All concur.